CADILLAC GAGE COMPANY, INC., Plaintiff-Appellant,

v.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Defendants-Appellees.

No. 74-2333.

United States Court of Appeals, Sixth Circuit.

May 23, 1975.

John A. Entenman, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiff-appellant.

John A. Fillion, Jordan Rossen, Edwin Fabre, Leonard R. Page, United Auto Workers, Detroit, Mich., Lawrence G. Campbell, Dickinson, Wright, McKean &

Culdip, Detroit, Mich., for defendants-appellees.

Before WEICK, McCREE and MILLER, Circuit Judges.

.PER CURIAM.

This appeal is from an order of the District Court granting a motion for summary judgment enforcing the award of an arbitrator for the payment of benefits under Cadillac Gage Company's pension plan to its employee, Robert E. Jerome, who became totally and permanently disabled.

Cadillac Gage had filed suit in the District Court under the provisions of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate the arbitrator's award, claiming that the arbitrator in making his award acted in excess of his contractual authority and therefore the award was null and void. United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Prior to making application for his pension Jerome had applied for workmen's compensation benefits under Michigan law, claiming that in the course of his employment he developed emphysema and other ailments which he attributed to the hazards of his employment. The arbitrator stated:

It is agreed by Company and Union that he became totally and permanently disabled.

The claim under the Workmen's Compensation Act was settled by an Agreement to Redeem Liability, entered into between Jerome and Cadillac Gage, whereby Cadillac Gage agreed to make a lump sum payment to Jerome in the sum of $19,000, to redeem its potential liability under the Act. The agreement was approved by a Redemption Order entered by the Hearing Referee of the Workmen's Compensation Commission.

At the same time Jerome signed a Release and Waiver of Seniority, which provided:

Whereas Robert E. Jerome has filed a claim under the Workmen's Compensation Act for injury alleged to have resulted from his employment, and whereas the employer, Cadillac Gage Co., has denied liability, the undersigned Robert E. Jerome, in consideration of a settlement of this claim through redemption proceedings with the Workmen's Compensation Department, does hereby voluntarily quit his employment with the Cadillac Gage Co., waives any and all seniority rights he may have and releases any claim he may have for re-employment based on such seniority rights.

After the time for appeal from the Redemption Order of the Referee had expired, Cadillac Gage made payment of the sum of $19,000, which sum was distributed under the terms of the Order for the payment of medical bills, attorney's fees and the balance to Jerome.

Following settlement of the Workmen's Compensation claim Jerome applied to the company for a Total and Permanent Disability Pension, which application was transmitted to the Board of Administration of the Pension Plan. The function of the Board was to determine all disputes between the company and its employees over their pension claims. The Board consisted of three members appointed by the company and three members appointed by the International Union, and an Impartial Chairman or arbitrator in the event of disagreement of the other six Board members.

The company and union members became deadlocked over the question of allowance of the pension, and they agreed upon the Impartial Chairman or arbitrator to settle the dispute.

It was the position of the company that Jerome was no longer an employee of the company at the time he filed his application for a pension and that he waived all rights to a pension when he signed the Agreement to Redeem Liabili-

ty for his Workmen's Compensation benefits and the Release and Waiver of Seniority.

Article II, Section 4(a) of the Pension Plan provides in relevant part:

An employe who, subsequent to July 1, 1960, is determined to be totally and permanently disabled hereunder prior to attaining age 65, and who has at least 15 years of credited service, shall be eligible for a disability pension as hereinafter provided. . . .

Section 4(b) provides in part:

An employe shall be deemed to be totally and permanently disabled when, on the basis of medical evidence satisfactory to the Board, he is found to be wholly and permanently prevented from engaging in any regular occupation or employment . . . .

The powers of the Board are contained in the Pension Plan which in part provided:

To make findings of facts and determinations as to the rights of any employe applying for retirement benefits, and to afford any such individual dissatisfied with any such finding or determination, the right to a hearing thereon.

The Board conducted hearings and adopted findings of fact and determinations as to the rights of Jerome. They are embodied in the written opinion of the Impartial Chairman or arbitrator. Essentially he found:

As Impartial Chairman, it appears to me that neither party has placed proper bearing on the one fulcrum on which decision must rest—the date upon which Jerome became eligible, if at all, for permanent and total disability pension. It was not on December 16. He had already waived his seniority rights on the first of that month. Nor was it December 1st. If he had any right to a disability pension, and I conclude that he did, it was on the date he suffered permanent and total disability. Note Section 4(a) of Article III: "An employee who . . . is determined to be totally and perma-

nently disabled hereunder prior to attaining age 65, and who has at least 15 years of credited service, shall be eligible for a disability pension," (reduced to 10 years after September 1, 1961). Jerome, by the express language of this section, became eligible for a disability pension, not on December 1, not on December 16, but at the time he was "determined to be totally and permanently disabled." The exact date may be indecisive, and certainly is not now susceptible of accurate ascertainment, but it had to occur before or during the progress of the proceedings in Workmen's Compensation and thus before December 1, 1971. The Company so acknowledged at least tacitly when it entered into the Agreement of Redemption. It conceded as much during the hearings in this matter.

If it is accepted, as I believe it must, that Jerome's eligibility for disability pension occurred at some such earlier period, then the dates of December 1 and 16, the waiver of re-employment rights, the waiver of seniority, the lack of Union representation, are all irrelevant to this issue. A waiver of disability pension may be effected after eligibility has occurred only by virtue of Section 5 of the 1966 Agreement Covering the Amended Pension Plan, entitled Suspension of Benefits at Option of Employee and then only if the employee should "request the Board of Administration in writing to suspend payment for any period of all or any part of such pension otherwise payable to him hereunder." Needless to say, this was not done.

. . . . .

I find that Jerome became eligible for Permanent and Total Disability Pension prior to December 1, 1971 and that none of the documents signed by him in November and December, 1971 operated as a waiver of his right to such pension. As duly designated Impartial Chairman of the Board of Administration, I vote that Robert E. Jerome's application for pension due to

total and permanent disability retirement be approved, and that payment thereof be made in accordance with the terms and conditions of the Pension Plan as though approval had been voted at the meeting of the Board of Administration on January 21, 1972. Lacking precise data as to when the disability commenced, I vote that it be deemed, for purposes of this matter, to have commenced on November 26, 1971, the date of execution of the Agreement of Redemption. (A. 20–22)

The District Judge recognized that the arbitrator was bound to follow the provisions of the Pension Plan where they are unambiguous and that he could not add to or subtract therefrom. The District Judge found, however, that the provisions were ambiguous, stating:

It is ambiguous as to whether employee means presently employed or at one time employed. It is ambiguous as to whether the pension rights vest at the time when the board makes its determination of disability or at the time determined by the board when the disability occurred. These ambiguities create problems of interpretation and it is within the power of the board to interpret. This Court's judgment about what the language means or what the parties intended is no better than the arbitrator's judgment. Having agreed to a system whereby such problems are resolved by an arbitrator—and I point out that the company had a voice in the selection of the arbitrator—the company must now live with the decision that was made by the arbitrator. (A. 48)

It is significant that at the time the papers were signed for the settlement of the Workmen's Compensation claim, nothing was stated about a waiver or release of pension rights to which Jerome was entitled since he was totally and permanently disabled. None of the agreements executed by Jerome provided that he was waiving his pension rights; nor was the Workmen's Compensation Referee, who entered the order, advised that the rights of the claimant to a pension were being waived.

In our opinion the arbitrator had full power and authority to interpret the pension agreement. It certainly needed interpretation, and we have no authority to substitute our judgment for that of the arbitrator in his interpretation of the contract. Morris v. Werner-Continental, Inc., 466 F.2d 1185 (6th Cir. 1972); Chambers v. Beaunit Corp., 404 F.2d 128 (6th Cir. 1968); Baldwin-Montrose Chem. Co. v. International Union, United Rubberworkers, 383 F.2d 796 (6th Cir. 1967); Kroger Co. v. International Bhd. of Teamsters, Local 661, 380 F.2d 728 (6th Cir. 1967); United Steelworkers v. Caster Mold & Mach. Co., 345 F.2d 429 (6th Cir. 1965); Retail Clerks Int'l Assn., Local 128 & 633 v. Lion Dry Goods, Inc., 341 F.2d 715 (6th Cir. 1965).

The judgment of the District Court is affirmed.