**The KROGER COMPANY, Plaintiff-Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 661, Defendant-Appellant.**

**No. 16973.**

United States Court of Appeals
Sixth Circuit.

June 17, 1967.

Robert I. Doggett, Cincinnati, Ohio, Smith & Latimer, Cincinnati, Ohio, on brief, for appellant.

Frank H. Stewart, Cincinnati, Ohio, J. Mack Swigert, Cincinnati, Ohio, on brief; George A. Leonard, Cincinnati, Ohio, of counsel, for appellee.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

This is an action under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), in which the Kroger Company seeks to vacate an arbitration award in favor of a discharged employee. The dispute is between Kroger and the appellant Union, involving a grievance on behalf of Mrs. Grace Angel, a Kroger employee, who is employed in a warehouse as a price stamper. At the time of her grievance she had been a Kroger employee for twenty-three years.

Among other things, the arbitrator awarded back pay in favor of the employee and reinstated her participation in Kroger's profit sharing plan. Kroger challenged the award on the ground that the matters of back pay and reinstatement in the profit sharing plan were not within the defined issues submitted by the parties to the arbitrator for determination.[1]

The district court granted Kroger's motion for summary judgment, holding that the questions of back pay and reinstatement in the company's profit sharing plan were not part of the subject matter of the issues submitted to the arbitrator. The district court held this part of the arbitration award to be unenforceable.

We reverse.

Early in February, 1962, Mrs. Angel suffered a nervous collapse while working for Kroger. She received twenty-six weeks of medical treatment and then was granted an additional leave of absence of ninety days. This leave plus the extension was to expire on November 13, 1962, but on November 5, 1962, grievant requested a second or additional leave of absence of ninety days.

Appellee notified grievant that a decision on her request for an extension would be delayed pending a further medical examination.

On December 14, 1962, after a medical examination, Kroger denied Mrs. Angel's request for an additional extension of her leave of absence. Grievance proceedings were then initiated, terminating in the submission of the grievance to an arbitrator on November 22, 1963. The issues which were submitted to the arbitrator, as agreed to by the parties, were:

"(1) Whether or not the Company had the right to refuse to extend Grace Angel's leave; and

"(2) Thereafter apply the remaining provisions of this contract which resulted in the severance of her employment."

On the first question the arbitrator found, as conceded by the Union from the outset, that the Company had the right to refuse to extend Mrs. Angel's leave. With respect to the second issue

---

1. This action originally was brought in the Common Pleas Court of Hamilton County, Ohio, but was removed to federal district court on the basis of that court's original jurisdiction over suits for breach of collective bargaining agreements, under § 301(a) Labor Management Relations Act, 29 U.S.C. § 185(a).

he held that the Company had given Mrs. Angel a day-to-day extension of her leave. He ordered the Company to give Mrs. Angel back pay from December 14, 1962, without prejudice to her rights under Kroger's seniority and profit sharing system.[2]

In obedience to the arbitration award, Kroger reinstated Mrs. Angel to her job, and the record indicates that she has continued to work since that time. This suit was instituted, as hereinabove stated, challenging so much of the award as granted Mrs. Angel back pay from December 14, 1962, and reinstated her participation in Kroger's profit sharing plan, on the grounds that these issues had not been submitted to the arbitrator. The issue was submitted to the district court on cross-motions for summary judgment pursuant to Rule 56, F.R.Civ.P.

In United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, the Supreme Court said:

"[T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party * * * did agree to give the arbitrator power to make the award he made."

■ It is axiomatic that a court will not review the merits of an arbitration award. United Steelworkers of America v. Caster Mold and Machine Co., 345 F.2d 429 (C.A.6). "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424.

■ The fact that the arbitrator's opinion, accompanying his award, is ambiguous is not a reason for refusing to enforce the award. United Steelworkers v. Enterprise Wheel & Car Corp., supra. Likewise where the question of the submission to the arbitrator is vague, the award of the arbitrator will not be set aside in a subsequent court proceeding,

---

2. Although the entire contract was before the arbitrator, there were three provisions specifically cited for his consideration:

"ARTICLE 4. ABSENCE, Section 4.2
"Leave of Absence—Any employee desiring leave of absence from his employment shall secure written permission from both the Union and Employer. The maximum leave of absence shall be for ninety (90) days and may be extended for like periods. Permission for extension must be secured from both the Union and the Employer. Failure to comply with this provision, shall result in the complete loss of seniority rights for the employees involved. The employee must make suitable arrangements for continuation of Health and Welfare payments before the leave may be approved by either the Union or Employer. Leave of absence will not be granted for the purpose of trying out for another job.

*       *       *       *       *

"ARTICLE 7. MANAGEMENT RIGHTS
"The management of the business and the direction of the working forces, including the right to plan, direct and control warehouse operations, hire, suspend or discharge for proper cause, transfer or relieve employees from duty because of lack of work or for other legitimate reasons, the right to study or introduce new or improved production methods or facilities, and the right to establish and maintain rules and regulations covering the operation of the warehouse, a violation of which shall be among the causes for discharge, are vested in the Employer, provided however, that this right shall be exercised with due regard for the rights of the employees and provided further that it will not be used for the purpose of discrimination against any employee, or for the purpose of invalidating any contract provisions.
"SCHEDULE 'A', ITEM D, Paragraph 2
"Seniority shall be considered broken if an employee is duly discharged by the Employer, if he voluntarily quits employment, if he has been laid off continuously for a period of more than six (6) months or if he is called back to work after a layoff and does not report for work within one (1) week."

unless it can be shown that the essence of the resulting award was not drawn from the collective bargaining agreement. Only when the words of the arbitrator "manifest an infidelity to this obligation" should courts refuse to enforce the award. United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. at 597, 80 S.Ct. at 1361.

Much of the difficulty in the present case grows out of the recalcitrance of the parties in agreeing upon the issues to be submitted to the arbitrator. If the parties had submitted the issues to the arbitrator in clear and precise terms this litigation might never have been necessary. Instead, counsel engaged in an interchange of verbal gymnastics, which shed more heat than light upon the issues to be considered and left the area of the arbitration in a state of vagueness and uncertainty.

After a considerable amount of verbal sparring, Kroger's attorney proposed the two issues upon which the arbitration award ultimately was made.

The first of these issues—whether or not Kroger had the right to refuse to extend grievant's leave of absence—was not even in dispute. The Union had conceded from the outset that Kroger had the right to decline to extend the leave of absence, saying: "This is axiomatic from the terminology of the contract, which says that extensions of leaves of absence are by mutual agreement of the company and the union."

The second question proposed by Kroger was both sweeping and indefinite. Kroger now complains about the breadth of an award based on an issue whose terminology was proposed by its own representative. We construe this language to be reasonably susceptible of a construction that threw open for consideration and determination by the arbitrator the entire contract and all issues arising under it with respect to Mrs. Angel. This includes the propriety of "the severance of her employment," and we cannot say that the arbitrator was precluded from construing this sweeping language to authorize an adjudication of the right to back pay and reinstatement in Kroger's profit sharing plan.

In his argument to the arbitrator counsel for the Union discussed the propriety of an award of back pay as a remedy. We find nothing in the transcript indicating that Kroger ever took a position before the arbitrator that this was not an arbitrable issue. In fact the record indicates that the Company failed to discuss remedies in its argument before the arbitrator.

Article 10 of the collective bargaining agreement [3] foresaw the possibility of an award of back pay if there was a wrong-

---

3. "ARTICLE 10. DISCHARGE OR SUSPENSION

"The Employer shall not discharge or suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee, to the employee, in writing, and a copy of the same to the Union and job steward affected, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is dishonesty or drunkenness or recklessness resulting in serious accident while on duty or the carrying of unauthorized passengers while on the job. The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from date of said warning notice. The Union will be notified of any discharge. In the event the Union alleges the discharge is improper, the Union shall have five (5) days after notification to file a complaint. The five (5) days notification herein mentioned shall commence when the steward or Union business agent has been officially notified by the Employer representative of the discharge action. Such complaint must be taken up promptly in the manner provided for in the grievance procedure set forth in Article 8, and if the Union and the Employer fail to resolve the complaint within one (1) week through the use of Steps 1, 2 and 3 of Section 8.1, then the complaint shall be taken to Step 4 of Section 8.1. If at any step of the grievance procedure it is agreed that the employee should be reinstated, the parties shall have the authority to agree upon full, partial or no compensation for time lost."

ful discharge or suspension of an employee by the company.

Therefore, when the question of the entire contract and its interpretation and application were presented to the arbitrator, we cannot say that his award is not to be found within the four corners of that contract. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562 (C.A. 8).

■ The Company further contends that the award of the arbitrator was based on his finding that the Company had granted a day-to-day leave of absence and that the contract does not provide for leave of absence with pay. We reiterate that a court cannot substitute its judgment or interpretation of a collective bargaining agreement for that of the arbitrator. The fact that a court might have applied a different interpretation to the collective bargaining agreement is no reason for setting aside the arbitrator's award. United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 598–599, 80 S.Ct. 1358. However, the arbitrator here found a day-to-day leave of absence by the company from November 13 to December 14, but the award provided that back pay and profit sharing would be allowed from December 14. Thus the award does not contradict the leave of absence section of the contract. The final decision of the Company to refuse to extend grievant's leave of absence was not until December 14, the date the arbitration award commenced. The second issue submitted by Kroger was whether Kroger had the right "to apply the remaining provisions of this contract *which resulted in the severance of her employment."* (emphasis sup-

plied). By submitting this issue to the arbitration, Kroger admited that it had severed the employment of this employee who had twenty-three years of seniority with the company. Therefore in light of Article 10 of the contract (providing for back pay for wrongful discharge or suspension) we cannot say that the arbitrator did not act within the authority granted to him by the parties. John Wiley & Sons, Inc. v. Livingston, supra, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; United Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. 594, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424.[4]

The judgment of the district court is reversed and the case is remanded with instructions to grant defendant-appellant's motion for summary judgment dismissing this suit.

---

4. In United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, the Court held that:
 "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency."