**CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION NO. 878, Appellee,**

v.

**COCA–COLA BOTTLING COMPANY, Appellant.**

No. 79–1196.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1979.

Decided Jan. 18, 1980.

Rehearing and Rehearing En Banc Denied Feb. 26, 1980.

Jeff Starling, Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for appellant.

Melva H. Kozinsky, Little Rock, Ark., for appellee.

Before LAY,* Chief Judge, and HEANEY and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

The sole issue on appeal is whether an arbitrator exceeded his authority in reinstating a discharged employee of the Coca-Cola Bottling Company of Arkansas. The discharge was submitted to arbitration pursuant to a collective bargaining agreement between the Chauffeurs, Teamsters and Helpers Local No. 878 and the Company. After arbitration, the Company refused to reinstate the employee. The Union then commenced this action in district court [1] under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to compel enforcement. On cross motions for summary judgment pursuant to Rule 56, F.R.Civ.P., the district court found the arbitrator's decision to be within the authority granted to him by the bargaining agreement and ordered compliance. We affirm.

I.

We note initially that judicial review of labor arbitration is limited. This Court recently summarized the nature of that review as follows:

> To effectuate the strong federal policy favoring arbitration as a means of resolv-

---

* Judge Donald P. Lay became Chief Judge on January 1, 1980.

1. District Court for the Eastern District of Arkansas.

ing labor disputes, our review of the arbitrator's award is limited. *United Steelwkrs. of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelwkrs. of Am. v. Warrior & Gulf N. Co.*, 363 U.S. 574, 80 S.Ct. 1347, · 4 L.Ed.2d 1409 (1960); *United Steelwkrs. of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). *See also Resilient Floor v. Welco Mfg. Co., Inc.*, 542 F.2d 1029 (8th Cir. 1976); *General Drivers v. Sears, Roebuck & Co.*, 535 F.2d 1072 (8th Cir. 1976). It is not within the scope of our review to pass upon the merits of a grievance. *See General Drivers & H.U., L. 554 v. Young & Hay Transp. Co.*, 522 F.2d 562 (8th Cir. 1975). The grant of power by the agreement must be broadly construed, with any doubt resolved in favor of the arbitrator's authority. *Resilient Floor Etc. v. Welco Mfg. Co. Inc.*, supra at 1032; [*Western Iowa Pork Co. v. National Bro. Pack. & Dairy Wkrs.*, 366 F.2d 275, 277 (8th Cir. 1966)]. *Kewanee Machinery v. Local U. No. 21, Intern. Bro.*, 593 F.2d 314, 316–317 (8th Cir. 1979).

With this standard in mind, we turn to the facts of the case.

## II.

On the afternoon of June 9, 1976, the Company discharged Ray Lievsay, a Union member, from his employment as a merchandiser. The discharge arose out of an incident that occurred that morning as Lievsay was in the process of preparing to embark on his truck route delivering cases of the Company's product. Apparently, Lievsay broke a case of Dr. Pepper and, instead of admitting this to the Company, he represented to the clerk-checker that he had been shorted this case by the packers. After the missing case was added to his load, Lievsay left on his route.

During the day, Lievsay's supervisor, Mr. Haguewood, was informed by another manager that one of the drivers had broken a case of product in the Company's parking lot. Haguewood investigated and learned that the area manager had observed Lievsay sweeping up the remains of a case of Dr. Pepper in the parking lot near the plant's back gate. Haguewood then talked with the clerk-checker who stated that Lievsay had claimed at checkout that he was improperly charged with two cases of Sprite and that he was short a case each of Tab, Fresca and Dr. Pepper. On the basis of this information and a review of Lievsay's personnel record, which contained two warnings for prior unrelated incidents, Haguewood decided to terminate Lievsay's employment. He prepared a letter to that effect citing only the dishonesty charge.

That afternoon, after Lievsay returned to the Company's plant and turned in his receipts, he was presented with the letter. He was not afforded an opportunity to tell his side of the story prior to termination.

Within a week, Lievsay filed a grievance claiming that he was unjustly terminated and requesting reinstatement and back pay. This grievance was ultimately submitted to arbitration and the arbitrator, construing a contract term permitting disciplinary action for "just cause," ordered reinstatement but without back pay. In so doing, he found as follows:

> The weight of the evidence indicates that Lievsay told [the Company's clerk-checker] that he was short the case of Liter Dr. Pepper instead of telling him that he had broken the case. * * * This leads to the conclusion that the termination of Lievsay was for just cause *provided* due process was followed in handling the discharge. But the Company's action was marked by a serious defect in that it appears that Management did not give the Grievant adequate opportunity to present his side of the case before discharging him.

(Emphasis included.)

Thus, the arbitrator held that a lack of procedural fairness caused Lievsay's dismissal to fall short of the just cause standard.

The district court, in enforcing the arbitrator's award, held that the arbitrator's construction of "just cause" was not an

unauthorized modification of the contract but was a legitimate resolution of contractual ambiguity. The court wrote:

It is clear from the contract language that the arbitrator will have to determine some standard by which to measure employer actions against the operative guide of "just causes." The contract language nowhere explicitly covers the question of what requirements may obtain in the *process* of a discharge. In this case, the arbitrator, despite somewhat inexact language, clearly interpreted the requirement of "just cause" for discharge to include not only the substantive elements of appropriate factual circumstances but also the procedural requirement of what is commonly referred to as "industrial due process" that the employee be given some minimal, adequate opportunity to present his side of the case before the discharge. The Court recognizes that such a requirement does not have its specific foundation in constitutional law, or in any specific language of the contract, but the Court cannot say that the arbitrator's requirement is unfounded in reason or so unconnected with the wording and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator.

*Chauffeurs, Teamsters and Helpers Local No. 878 v. Coca-Cola Bottling Company of Arkansas*, slip op. at 6–7, No. LR–C–77–0107 (E.D.Ark. Feb. 2, 1979).

### III.

The Company's primary contention, advanced to both the district court and us, is that the arbitrator's award is unenforceable because it was without foundation in the collective bargaining agreement and was, therefore, in excess of the arbitrator's authority. In particular, it cites to Articles 7, 9 and 34 of its collective bargaining agreement for the proposition that the arbitrator was without authority to find as he did. These agreements, in pertinent part, are set out below:

*ARTICLE 7—DISCHARGE OR DISCIPLINARY ACTION*

*Section 1—Cause of Action*

The Employer shall not discharge, suspend or take other disciplinary action with respect to any employee without just cause. In disciplinary matters at least one warning notice of the complaint against the employee shall be given to the employee in writing either by mail or in person and a copy will be sent to the Union; *PROVIDED, no warning notice need be given to an employee before discharge if the cause of the discharge is dishonesty*; physical and/or verbal abuse of a customer; refusal to carry out job assignment; drinking alcoholic beverages or being under their influence while on duty or on Employer property; the use of stimulants or narcotics or being under their influence while on duty or on Employer property; recklessness resulting in serious accident while on duty or on Employer property; the transportation of unauthorized passengers; the carrying of unauthorized firearms; the failure to report an accident to the Employer and to the police. The first written warning notice provided herein shall be withdrawn from an employee's file after one year unless during such year the employee shall receive another written warning for the same reason. A pattern of warning notices, related or unrelated, and without limitation in time, shall be just cause for discharge. All warning notices, discharges, suspensions, or other disciplinary action must be by proper written notice to the employee and to the Union.

\*    \*    \*    \*    \*    \*

*ARTICLE 9—ARBITRATION PROCEDURE*

\*    \*    \*    \*    \*    \*

In rendering a decision, the arbitrator shall be governed and limited by the express provisions of this Agreement, and the clear intent of the parties as set forth hereinabove. *He shall not sit to dispense his own brand of industrial justice and he shall have no power to add to, subtract from, or modify any of the terms and*

*provisions of this Agreement* and he shall consider and render decision concerning only such issues as are directly raised by the written complaint, which shall not be in any way changed or amended after it is first presented to the Employer.

\*   \*   \*   \*   \*   \*

*ARTICLE 34—MANAGEMENT RIGHTS*

The Employer retains and shall continue to exercise any and all rights, authority, powers and privileges which it had prior to the execution of this Agreement except only as such rights, authority, powers and privileges are clearly and expressly relinquished by the specific terms and provisions of this Agreement. Included within such rights, authority, powers and privileges, but without limiting the generality of the foregoing, are the rights to determine the size of the working force and the number of employees required, either temporarily or permanently, in any job classification or department; *the right to reprimand, suspend, discharge or otherwise discipline employees for cause determined to be just by the Employer * * *.*

(Emphasis added.)

The Company argues that Article 7, Section 1, completely defines "just cause," leaving no ambiguity unresolved. It contends that the first sentence of that section is refined by the subsequent sentences which describe the parties' agreement concerning progressive discipline. From this, the Company contends it is clear that dishonesty constitutes just cause for dismissal without prior warning *and* without an opportunity for the employee to explain his side of the story.

This argument is buttressed, according to the Company, by the dictate of Article 9 that the arbitration shall be "limited by the express provisions of [the] Agreement." By forbidding an arbitrator to "dispense his own brand of industrial justice" the contract prohibits the use of concepts not set forth expressly or required by contractual ambiguity. Since Article 7, Section 1, fully defines "just cause," the Company characterizes the arbitrator's due process requirements as an unauthorized attempt to inflict his own brand of industrial justice on the parties. Finally, the Company argues that, if any ambiguity exists in the "just cause" term as used in Article 7, it is resolved by Article 34 which makes it explicit that just cause is to be determined by the Company.

IV.

Our analysis of the Company's argument must begin with the observation that Article 34 in no way alters the "just cause" term. of Article 7. Article 34 reserves to the Company only those rights not "clearly and expressly relinquished by the specific terms" of the contract. Article 7 clearly and expressly limits the Company's right to discipline without just cause. The general provisions of Article 34 cannot, therefore, alter the more restrictive "specific terms" of Article 7. Lievsay's dismissal was governed by Article 7 and the letter of termination so stated. At most, the two provisions raise an. ambiguity in the contract that was within the power of the arbitrator to resolve.

Turning then to the Company's argument based on Articles 7 and 9, we note that its underlying fallacy is its failure to recognize that "just cause" may imply procedural as well as substantive requirements. The contract's clear statement that a single act of dishonesty justifies a discharge is mistakenly viewed as a statement that no procedural requirements attach to the *processing* of that discharge. Quite simply, the contract is silent on what procedural prerequisites attach to the requirement that a discharge be for just cause. Since a "just cause" term is ambiguous as to its procedural implications, interpretation by an arbitrator is appropriate.

The Company indicates surprise at being presented with an arbitrator's award in which "just cause" was interpreted as having a fair hearing dimension. We think that this surprise is unfounded; arbitrators have long been applying notions of "industrial due process" to "just cause" discharge cases. As Professor Summers noted, "[o]n

the bare words 'just cause' arbitrators have built a comprehensive and relatively stable body of both substantive and procedural law." Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute*, 62 Va.L.Rev. 481, 500 (1976) (footnote deleted). Professor Summers also commented that the retention of the bare "just cause" language in newly negotiated agreements is an indication of the widespread acceptance of arbitrators' due process interpretations. *Id.* at 505.[2] To a similar effect are the comments of Professor Getman:

> To enhance its chances of winning at arbitration, a company needs to establish careful disciplinary procedures consistent with arbitration awards defining the concept of just cause. Arbitrators generally insist on equal punishment for the same offense, and they require that employees be given advance notice of company rules *and a chance to explain their behavior before they are disciplined.*

Getman, *Labor Arbitration and Dispute Resolution*, 88 Yale L.J. 916, 921 (1979) (footnote deleted, emphasis added). *See also Combustion Engineering, Inc.*, 42 Lab. Arb. 806 (1964) (Daugherty, Arb.).

While our interpretation of "just cause" may differ from that of the arbitrator in this case, such disagreement is irrelevant to our review. We are not to review the merits. *Kewanee Machinery v. Local U. No. 21, Intern. Bro., supra* at 317 n.3.

The Company relies heavily on two cases in which Circuit Courts have set aside awards when the arbitrators injected due process considerations into unambiguous grants of disciplinary authority. We find this reliance inappropriate. In the first case, *Mistletoe Exp. Serv. v. Motor Express-*

*men's U.*, 566 F.2d 692 (10th Cir. 1977), a driver who collected C.O.D. payments on his route was discharged for failing to settle one of these payments with the company within the required twenty-four hours. The contract provided:

> Employees may be discharged for just cause, among which just causes are the following:
>
> *   *   *   *   *   *
>
> (G) Failure to settle bills and funds collected for the company within twenty-four (24) hours.

*Id.* at 694.

The arbitrator determined that the company had imposed a too severe penalty for the offense. He held that although there was just cause for a suspension, there was no just cause for discharge. The Tenth Circuit, in refusing to enforce the award, stated:·

> The contract says that the acts, which the arbitrator found are just cause for discipline, are just cause for discharge. The arbitrator may not rewrite the labor contract.

*Id.* at 695.

This case in no way involves an arbitrator's interpretation of the procedural requirements of a "just cause" contract clause. It involves, solely the substantive aspects of "just cause"—aspects which were explicitly defined in the contract.

In *Local 342, United Automobile, A. & A. I. Wkrs. v. T.R.W., Inc.*, 402 F.2d 727 (6th Cir. 1968), *cert. denied*, 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969), an arbitrator reinstated seven employees who were selectively discharged after a strike involving over 200 company employees. The arbi-

---

2. It should be noted that Professor Summers, in outlining some of the general principles of "just cause" due process as developed by arbitrators, stated that "[t]he employee is not entitled to a hearing before discipline is imposed, unless the contract so provides * * *." Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute*, 62 Va.L.Rev. 481, 504 (1976). This characterization of the emerging interpretation of just cause differs from that of Professor Getman, quoted in the text, and Professors Jennings and Wolters. They wrote,

"The most commonly cited violation of due process which did occur revolved around the investigation of the incident. More specifically, *the grievant was not permitted to explain his actions prior to the time the decision to discharge him was made*, or key witnesses to the incident in question were not present to give first-hand testimony at the arbitration hearing." Jennings & Wolters, *Discharge Cases Reconsidered*, 31 Arb.J. 164, 178 (1976) (emphasis added).

trator based reinstatement on his belief that the procedure surrounding the discharge was "lacking in fundamental fairness." *Id.* at 729. The Sixth Circuit refused enforcement since the contract unambiguously gave the company "the right * * * to take disciplinary action, including discharge, against any employees who participate in a [strike], whether such action is taken against all of the participants or against only selected participants * * *." *Id.* at 728 (emphasis deleted). The contract was devoid of any "just cause" provision and contained no term requiring interpretation by the arbitrator. The case is, therefore, similarly inapposite.

More on point is *Kewanee Machinery v. Local U. No. 21, Intern. Bro., supra.* There, we enforced an arbitrator's award reinstating an employee who was dismissed for absenteeism even though his absences were caused by a bona fide illness. We observed that the arbitrator's award was based on his resolution of an inherent tension between two contractual provisions, one reserving to the company the unrestricted right to discharge employees, the other providing that seniority and employment relations shall be terminated when an employee is discharged for proper cause. That tension, like the procedural ambiguity inherent in the "just cause" clause now before us, required resolution by the arbitrator.

In short, the arbitrator here was required to decide what "just cause" means. His holding that the term has significant procedural implications is not beyond the scope of his authority. His award drew its essence from the contract and cannot be set aside by this Court. *United Steelwkrs. of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

For these reasons, we affirm.

HENLEY, Circuit Judge, dissenting.

I disagree with the majority's conclusion that the arbitrator's interpretation of the term "just cause" draws its essence from the collective bargaining agreement. Although it is arguable that the use of the term "just cause" may in some contexts provide an employee with an opportunity to explain his actions prior to dismissal,[1] the present collective bargaining agreement specifically reads out of the term "just cause" any requirement of procedural due process prior to termination for particular types of discharges.

Article 7, Section 1 of the agreement provides in pertinent part:

> The Employer shall not discharge, suspend or take other disciplinary action with respect to any employee without just cause. In disciplinary matters at least one warning notice of the complaint against the employee shall be given to the employee . . . PROVIDED, no warning notice need be given to an employee before discharge if the cause of the discharge is dishonesty . . .

Because the employee in the present case was discharged for dishonesty, the arbitrator was thus compelled by the clear language of the collective bargaining agreement to allow the employer to terminate the employee without notice.

While some sort of pre-discharge hearing might have been desirable, the arbitrator was not free to dispense his own brand of industrial justice and read into the express language of the collective bargaining agreement something that is not there. In such circumstances, we should vacate the arbitration award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

---

1. *See* Getman, *Labor Arbitration and Dispute Resolution,* 88 Yale L.J. 916, 921 (1979). *But see* Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute,* 62 Va.L. Rev. 481, 504 (1976).