**TEAMSTERS LOCAL UNION NO. 284, et al., Plaintiffs,**

**v.**

**MAREMONT CORPORATION, Defendant.**

**No. C–2–78–1242.**

United States District Court, S. D. Ohio, E. D.

Nov. 25, 1980.

Bruce E. Pence, Dayton, Ohio, for plaintiffs.

James R. Moats, Columbus, Ohio, Gerald A. Golden, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This action was brought by plaintiff Teamsters Local Union No. 284 (hereinafter "union") pursuant to § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 and 9 U.S.C. § 9. The plaintiff union seeks enforcement of the arbitration award of Arbitrator Charles P. Chapman, Esq., dated October 18, 1978. The award determined that the five grievants who had engaged in an illegal wildcat strike were entitled to reinstatement without backpay. Maremont Corporation (hereinafter "company") has refused to comply with the arbitrator's award.

This matter is before the Court on the parties' cross-motions for summary judgment. Fed.R.Civ.P. 56. The Court is satisfied that the case presents no genuine issue as to any material fact, and that the case is therefore appropriate for summary judgment.

1. *Background*

The arbitrator determined that on May 1, 1978, the 13 day-shift employees left the plant at 11:00 a. m. on their normal lunch break. Some of these employees then set up a picket line at the entrance to the driveway leading from Norton Road to the defendant's plant. The pickets did not return to work at 11:30 a. m. when the lunch period was over.

At 11:40 a. m., union representatives who had heard of the illegal walkout appeared at the company offices and then proceeded to the picket line and ordered the employees back to work. The grievants (plaintiffs herein), however, did not return to work with the other employees. Some effort was made to urge the grievants to return to work that afternoon, but they did not in fact return until the next morning. When they returned for work, they were told that

their employment had been terminated. They then filed individual grievances.

The arbitrator concluded that the walkout was illegal and that the company did not act toward the grievants in a discriminatory, capricious or unreasonable manner. He therefore concluded that the company had just cause to discharge the grievants.

The arbitrator, however, also found that the company had not afforded the grievants and union the "contractual due process" to which they were entitled under the contract and that reinstatement without backpay was therefore appropriate. The arbitrator's failure of contractual due process theory was premised on Article IX of the collective bargaining agreement between the parties.

Article IX—DISCHARGE provides in pertinent part:

> Section 1. Should the Company discharge an employee for any cause, it shall first notify the Union thereof, in writing, and a conference shall be held between the Union and the Company within 72 hours. If no agreement is reached, the Company shall have the right to discharge the employee and the Union shall have the right to contest the discharge in accordance with the provisions of this Agreement.

With reference to the procedural requirements set out above, the arbitrator found:

> [T]he decision to discharge the grievants was made by the Company sometime in the late afternoon of May 1, 1978. Neither the Union nor the grievants were notified. The grievants found out when they reported for work. The meeting that was held on May 3 was primarily to discuss and iron out the reasons for the discharge of the grievants. There was no evidence produced to show that the parties had waived the procedural requirements of Article IX or that there were valid reasons for not following the agreed procedure. There is no other language in the contract that gives the Company the right to summarily discharge any employee. The import of Article IX is to suspend pending discharge until the Union has been notified in writing of the Com-

> pany's intent and a conference is held with the Union within 72 hours. ... Thus, the discharges must be set aside because the Company did not follow the agreed upon procedure.

### 2. The Court's Standard of Review

The seminal case of *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), carefully defined the limited review to be exercised by Federal District Courts in proceedings to enforce an arbitration award.

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stated in *United Steelworkers of America v. Warrior & Gulf Navigation Co., ante* [363 U.S.], p. 574 [80 S.Ct. p. 1347, 4 L.Ed.2d 1409], decided this day, the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level—disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements. 363 U.S. at 596, 80 S.Ct. at 1360.

Suggesting possible limitations on enforcement of the arbitrator's award, the *Enterprise Wheel* decision further explained:

> Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597, 80 S.Ct. at 1361.

The Sixth Circuit's view of the limited role of judicial review was expressed in

*Timken Co. v. Steelworkers*, 492 F.2d 1178 (6th Cir. 1974) and *Falls Stamping & Welding Co. v. UAW*, 575 F.2d 1191 (6th Cir. 1978).

With this limited review in mind, the Court now turns to the arguments of the defendant company which seeks to vacate the arbitrator's award.

3. *The Company's Challenge to the Arbitrator's Award*

The company's first argument is that the arbitrator exceeded the scope of the question submitted to him and the resulting award is therefore unenforceable. The arbitrator stated the issue in his opinion and award as follows: "Did the company have just cause to discharge or discipline the grievants." The company argues that the arbitrator's affirmative response to the above question precluded the arbitrator from considering compliance with the contractual due process provisions of the contract. The company supports its position by citation of authorities holding that if the arbitrator exceeds the scope of the submission to him, his authority is at an end. *Lee v. Olin Mathieson Chemical Corp.*, 271 F.Supp. 635, 639 (W.D.Va.1967); *Local 791, International Union of Electrical, Radio & Machine Workers, AFL–CIO v. Magnavox Co.*, 286 F.2d 465 (6th Cir. 1960); *Timken Co. v. Local Union No. 1123, United Steelworkers of America*, 482 F.2d 1012 (6th Cir. 1973).

While this Court has no quarrel with the requirement that the arbitrator cannot decide issues not submitted to him, it is not every minor deviation from the language of the submission that will warrant a declaration that the arbitrator exceeded his jurisdiction. In the present case the grievances before the arbitrator were drafted by the grievants themselves. The grievances were as follows:

Earl Pope: I feel that I was unjustly dismissed for taking part in a wildcat strike on the first (1) day of May 1978 and supposedly not returning when told by the union.

Godfrey Ludaway: I want [sic] unjustly fired on 5/2/78.

Raymond C. Bolognone: I feel that I was unjustly discharged 5/2/78.

Rufus A. Wright: I was fired unjustly. 5/2/78.

William Bates: I was fired for unfair justification on 5/2/78.

The informality of the above grievances should be contrasted to the submission at issue in a decision cited by the company, *Lee v. Olin Mathieson Chemical Corp.*, 271 F.Supp. at 637:

Two issues were submitted to the arbitrator:

1. "Does the company's (Olin's) refusal to permit terminated nonbargaining unit employees to return to the bargaining unit raise an arbitrable issue under the current labor agreement?"

2. "If so, does the Company's refusal to allow them to return to the bargaining unit constitute a violation of Article V, § 18?"

The collective bargaining agreement involved in *Lee* provided that the arbitrator's "jurisdiction to make an award *shall be* limited by the submission and confined to the interpretation of this Agreement. . . ." 271 F.Supp. at 638. Faced with the specific submission set out above and the express language of the agreement respecting the arbitrator's strict adherence to the submission, the *Lee* court correctly held that the arbitrator had exceeded his authority and refused to enforce the arbitrator's award.

The facts in this case, however, stand in sharp contrast to those in *Lee*. The grievances here were drafted by the grievants. The fact that the grievants did not expressly mention the failure to comply with the procedural requirements of Article IX is not surprising. Procedural defects may not be easily recognizable to a lay person.

■ This Court is satisfied that a layman's grievance expressing that he was unjustly discharged is adequate to give the company notice and the arbitrator jurisdiction to determine compliance with the procedural requirements of the agreement. Assuming *arguendo* that there is some devi-

ation between the grievances set out above and the procedural issue upon which the arbitrator relied, the Court is satisfied that the deviance is not so extreme as to divest the arbitrator of jurisdiction to decide the procedural issue.

The Court is also aided by the decision of the Sixth Circuit in *Kroger Co. v. International Brotherhood of Teamsters, Local 661*, 380 F.2d 728 (1967), where, in reversing the District Court, the Court wrote:

> The fact that the arbitrator's opinion, accompanying his award, is ambiguous is not a reason for refusing to enforce the award. *United Steelworkers v. Enterprise Wheel & Car Corp.* Likewise where the question of the submission to the arbitrator is vague, the award of the arbitrator will not be set aside in a subsequent court proceeding, unless it can be shown that the essence of the resulting award was not drawn from the collective bargaining agreement.

Here, as in *Kroger, supra,* the submission of the grievances which were drafted by the workers may have been vague, but there can be no doubt that essence of the award was drawn directly from Article IX of the agreement.

■ The company's second major argument is that Arbitrator Chapman denied the defendant company its right to a fair hearing. This argument is also related to the propriety of the arbitrator's consideration of the procedural issue involving Article IX of the agreement. The company strenuously argues that the Article IX procedural issue was raised for the first time *following* the hearing. Under these circumstances of surprise, the defendant argues that it had no fair opportunity to meet the Article IX procedural issue.

The facts pertinent to the fair hearing issue are as follows: The union made a very brief reference to "[p]rocedural arguments concerning the discharge and lack of investigation ..." during its opening statement before Arbitrator Chapman. (See transcript of arbitration proceeding at p. 116.) Read in context, it is doubtful that either the company or the arbitrator understood the significance of this reference to procedural arguments. Following the hearing, the union apparently argued in its brief to the arbitrator that Article IX of the agreement—requiring written notice to the union and a conference within 72 hours—had not been complied with by the company. Upon receipt of the union's brief, the company's counsel wrote to Arbitrator Chapman on October 4, 1978, protesting the portion of the union's brief dealing with the procedural issue.

> Dear Mr. Chapman:
>
> We, today, received the copy (forwarded by you) of the Union's post-hearing brief.
>
> We take exception to, and object to, the inclusion of "PART TWO" of the brief relating to an alleged procedural deficiency in the discharge process, for the reasons that:
>
> (1) No such claim or charge has been made prior to its being raised in this brief; and
>
> (2) There is nothing in the record to support such a charge, much less, the argument.
>
> We respectfully request that you ignore that portion of the union's post-hearing brief.

At this point, the company did not request permission to file a response to the union's argument nor did it request that the hearing be reopened to allow the company to present further evidence on the issue.

The union responded to the company's letter by letter of October 9, 1979. The union argued that the procedural issue was properly before the arbitrator.

The arbitrator's decision was issued on October 18, 1978. The arbitrator clearly considered the company's position on the contractual due process issue in his award and opinion. Although the arbitrator noted that "the record is devoid of any reference to the failure of the company to follow the procedural requirements of Article IX—Discharge," the arbitrator also found that the "evidence showed that the decision to discharge the grievants was made by the

company sometime in the late afternoon of May 1, 1978. Neither the union nor the grievants were notified." The Court finds this language ambiguous. On the one hand, the arbitrator states the record is "devoid of any reference" and, on the other hand, the arbitrator found evidence in the record to support the finding that the company had not complied with the procedural requirements of Article IX. The arbitrator may have meant that although the record was devoid of *argument* on the issue, there was ample *evidence* on the Article IX issue. In any event, it is well settled that ambiguity in the arbitrator's opinion is not sufficient ground to vacate the award. "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361.

Following the issuance of the arbitrator's award, the company again wrote in protest of the arbitrator's consideration of the procedural issue. The company's October 20, 1978, letter requested the arbitrator to withdraw his decision and asked the arbitrator's permission to file a brief on the procedural issue. The arbitrator denied that request by letter of October 28, 1978. The arbitrator reasoned that the company's request was untimely and that the arbitrator lacked jurisdiction to reopen the case following the issuance of the award.

Based on the above, the company argues that it was deprived of a fair hearing. *Harvey Aluminum, Inc. v. United Steelworkers of America*, 263 F.Supp. 488 (C.D. Cal.1967) is cited by the company for the proposition that an arbitrator's refusal to hear all of the testimony is a denial of the right to a fair hearing. The company also cites *Central Packing Company of Kansas, Inc. v. United Packinghouse Workers of America, Local Union No. 36, AFL–CIO*, 195 F.Supp. 188 (D.Kan.1961) in which the court vacated the arbitrator's award in a case where the arbitrator had considered facts obtained outside of the record.

The Court does not find those cases or others cited by the company applicable to the facts presented in this case. The company has not directed the Court's attention to any specific facts relied upon by the arbitrator which were not adduced at the hearing. The arbitrator's evidentiary findings concerning the Article IX issue were in fact based on the evidence developed at the hearing.

The remaining question is whether the principle of the above cases should be applied where the arbitrator has relied on *argument* not presented at the hearing. While the Court does not believe the procedures employed in this case are likely to lead to the fullest development of the issues, the Court cannot find the company was so prejudiced as to have been deprived of a fair hearing. The company clearly had notice of the union's procedural argument prior to the arbitrator's decision. The company chose to object to the procedural issue, but did not seek leave to file a reply brief or reopen the hearing for additional evidence. Only *after* the arbitrator's decision did the company seek permission to file the reply brief. It is important to note that the arbitrator took account of the company's objection, but construed the procedural requirement of Article IX as a mandatory obligation as to which there had been no waiver. Other than the procedural arguments noted above, the company has not proffered either to the arbitrator or this Court any evidence or substantive argument which would have affected the arbitrator's resolution of the Article IX issue. While this Court might not have come to the same conclusion on the contractual language, and the facts before the arbitrator, the Court's scope of review in this action does not permit me to second guess the arbitrator's findings.

It is beyond doubt that the arbitrator's award was drawn from the essence of the contract; that is, from Article IX of the agreement. Having bargained for the arbitrator's construction of the contract, the company is now obligated to adhere to the arbitrator's opinion and award.

### 4. Remedies for Alleged Breach of Contract

Plaintiffs' complaint and amended complaint both contain a demand for jury trial on the issue of damages for the company's alleged breach of the contract in failing to comply with the arbitrator's award. The defendant company has responded with a motion to strike the portion of plaintiff's complaint requesting damages and further requesting that the jury demand be denied.

The plaintiffs have cited the Court to no authority whatsoever in support of its argument that it need not arbitrate the question of damages and its demand for a jury trial on the issue of damages. The Court's own research, moreover, has failed to develop satisfactory authority for plaintiff's position.

■ Section XIII of the collective bargaining agreement between the parties provides as follows:

The arbitration procedure herein set forth is the sole and exclusive remedy of the parties hereto and the workers covered hereby for any claimed violations of this contract, and for any and all acts or omissions claimed to have been committed by either party during the term of this Agreement, and such arbitration procedure shall be (except to enforce, vacate, or modify awards) in lieu of any and all other remedies, forums at law, in equity or otherwise which will or may be available to either of the parties. The waiver of all other remedies and forums herein set forth shall apply to the parties hereto, and to all of the workers covered by this Agreement . . .

The company's failure to abide by the arbitrator's award is both a "claimed violation of the contract" and "an act or omission claimed to have been committed . . . during the term of this Agreement." Accordingly, under the parties' contract, arbitration is the sole and exclusive remedy of the parties unless this particular dispute is otherwise excluded by the contract.

■ The question therefore is whether the company's alleged breach in failing to comply with the arbitrator's award should be excused from arbitration by the parenthetical clause of Section XIII which provides in pertinent part: "and such arbitration procedure shall be (except to enforce, vacate, or modify awards) in lieu of any and all other remedies. . . ." The contractual language of Article XIII requires careful consideration of the exact scope of the arbitrator's award at issue in this case. As noted earlier, the arbitrator's opinion and award ordered reinstatement of the grievants without back pay. Because the company had not yet refused to comply with the award, the arbitrator, of course, did not have before him the alleged breach in failing to comply with the award now claimed by the union. This action is therefore an action only to enforce the award of reinstatement and the union's damage claim raises new matter which was not before the arbitrator. Accordingly, the parenthetical clause noted above does not reach the alleged breach in failing to follow the arbitrator's award. The general contractual rule of arbitrability therefore must prevail.

■ In summary, with respect to the damages caused by the alleged breach by the company in failing to follow the arbitrator's award, this action does not seek to *enforce* the arbitrator's award. The alleged breach, however, does constitute a claimed violation of the contract and is therefore subject to arbitration. Construction of the contract in the above manner is guided by settled legal principles favoring the arbitrability of remedial issues. *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionary Workers International, AFL–CIO*, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

■ The union argues, however, that the company, having refused to comply with the arbitrator's initial award, cannot now reasonably argue that the union must go to arbitration on the issue of damages. Although the union's argument has some surface appeal, it must be rejected. The language of the parenthetical clause in Section XIII of the contract provides evidence of the parties' awareness that arbitration

awards would not always be complied with and that judicial enforcement would sometimes be sought. Under these circumstances, the company's refusal to comply with the arbitrator's award was not a total repudiation of the contractual arbitration process.

Faced with a similar argument, the Supreme Court in *Drake Bakeries, supra,* responded as follows:

> Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach; and in determining whether one party has so repudiated his promise to arbitrate that the other party is excused the circumstances of the claimed repudiation are critically important.[10]

370 U.S. at 262–63, 82 S.Ct. at 1351. The Supreme Court's footnote 10 cites 6 Corbin, *Contracts* § 1443 which provides as follows:

> The effect of a repudiation upon the repudiator's right to arbitration should depend on the character of his so-called "repudiation" and the reasons given for it. One who flatly repudiates the provision for arbitration itself should have no right to the stay of a court action brought by the other party. But mere nonperformance, even though unjustified, is not *per se* a "repudiation." One who asserts in good faith that the facts justify him in refusing performance of other provisions in the contract should not thereby lose his right to arbitration that he would otherwise have had. There is no inconsistency in his demanding arbitration at the same time that he asserts his legal privilege not to proceed with performance.

The company in this case did not totally repudiate the provision for arbitration; but instead, refused to comply with the arbitrator's award based upon its good faith arguments which were addressed earlier in this memorandum. Although the Court has rejected the company's arguments respecting the arbitrator's award, the Court does not find the company's arguments to have been so unreasonable as to amount to a repudiation of the duty to arbitrate. Since the company "had a plausible ground for challenging the validity" of the arbitrator's award, its refusal to comply with the arbitrator's decision "until that question could be determined did not constitute a waiver of arbitration." *Mogge v. District No. 8, International Association of Machinists,* 387 F.2d 880, 882–83 (7th Cir. 1967). Although the *Mogge* decision involved an initial refusal to arbitrate based upon a good faith dispute regarding the validity of the underlying collective bargaining agreement, its principles are equally applicable to the somewhat different posture of this case. Therefore, having found that the company's challenge to the arbitrator's award was not unreasonable, its refusal to comply with that award did not amount to a waiver of its right to seek arbitration of the damage claim now urged by the union.

Accordingly, the question of damages * resulting from the company's refusal to comply with the arbitrator's award is a proper subject of arbitration and is not properly before the Court. *Drake Bakeries, Inc. v. Local 50 American Bakery & Confectionary Workers International, AFL–CIO,* 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). The case will therefore be remanded to the arbitrator for a determination of possible damages.

Plaintiffs' request for attorneys' fees has not been substantiated by a showing of bad faith on the part of the company and is therefore denied.

### Conclusion

Plaintiffs' motion for summary judgment is GRANTED. Defendant's motion to strike is also GRANTED. Defendant's motion for summary judgment is DENIED.

---

* Damages claimed by the individual plaintiffs include lost wages, seniority and other benefits.

The plaintiff union claims lost union dues since the date of the arbitrator's opinion and award.

The opinion and award of Arbitrator Chapman is enforced and the defendant is hereby ORDERED to reinstate the five individual plaintiffs forthwith in accordance with the arbitrator's award of October 18, 1978. This action is REMANDED to the arbitrator for a determination of damages, if any, and for good faith resolution of all remaining disputes in this matter.

So ORDERED.