DENNIS, Circuit Judge,
dissenting:
Our review of arbitration awards is under a highly deferential standard that requires us to enforce arbitration judgments that even “arguably construe or apply” a contract, even when we believe that construction reflects “serious error.” Eastern Associated Coal Corp. v. United Mine Workers of America, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000). Because I believe the majority does not adhere to this standard, I respectfully dissent.
The majority begins its analysis by taking aim at the arbitrator’s finding that American Eagle violated the plain terms of the collective bargaining agreement by failing to timely schedule a first-step hearing. Section 20(C) of the agreement says such a hearing “will be held at the pilot’s domicile within fourteen days” (emphasis added) of receipt of a timely request for a hearing. The arbitrator reasoned that because the Airline Pilots Association (ALPA) and Balser made a timely hearing request, the airline’s failure to schedule the hearing constituted a breach of Section 20(C).
The majority contends that the arbitrator erred in finding a contract violation because ALPA and Balser waived their right to a first-step hearing when they “elected to proceed to arbitration” under Section 20(G)(2).[1] The arbitrator expressly rejected this contract interpretation in reaching its decision. The arbitrator explained that Section 20(G)(2) addressed the union’s procedural quandary of where to go when the employer failed to provide the required hearing, and did not address what the remedy would be for the airline’s failure to provide the required hearing. Using that procedure merely “facihtate[d] [ALPA’s] attempt to get to the next hearing level,” and did not waive any remedies for the airline’s violation of the contract.
If the arbitrator was “even arguably construing or applying the contract and acting within the scope of [its] authority,” in reaching this result, “the fact that a court is convinced he committed serious error does not suffice to overturn that decision.” Eastern Associated Coal 531 U.S. at 62, 121 S.Ct. 462. Here, there is no question that the arbitrator was “arguably construing or applying the contract” in finding that American Eagle violated the collective bargaining agreement. Section 20(C) expresses the first-step hearing requirement in mandatory terms, and American Eagle did not abide by that section. While the scope of the remedy provided by Section 20(G) is susceptible to alternative interpretations, the majority is *412 incorrect in finding that the arbitrator’s view of that section as procedural is not even an “arguable” construction. And because the arbitrator was arguably applying the contract, the majority should not have disturbed that interpretation on review. “[A] court should not reject an award on the ground that the arbitrator misread the contract.” United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).
Thus, the central question here is whether the arbitrator exceeded his authority in considering American Eagle’s breach of the collective bargaining agreement in determining whether the airline could terminate Balser. “Collective bargaining agreements often say little or nothing about the arbitrator’s remedial powers; yet it cannot be that he has none ... [rather] the agreement must implicitly grant him remedial powers where there is no explicit grant.” Miller Brewing v. Brewery Workers Local 9, 739 F.2d 1159, 1163 (7th Cir.1984). In the context of evaluating terminations of employees, arbitrators have used this broad remedial power to reduce or reverse the discipline meted out to employees where an employer has not abided by the labor agreement’s prescribed grievance process. See 9 Tim BoRnstein et al, LaboR and Employment Law § 11.09 (2003) (explaining the wide discretion arbitrators have in altering employee discipline based on employer violations of grievance procedures).
For example, in Teamsters Local Union No. 281 v. Maremont Corp., 515 F.Supp. 168 (S.D.Ohio 1980), employees of Mare-mont engaged in an illegal wildcat strike that ordinarily may have been grounds for terminating the employees. However, the company did not abide by the collective bargaining agreement’s requirement that it give written reasons for termination and conduct a hearing within 72 hours of termination. Id. at 170. The arbitrator concluded that the employees had been denied “contractual due process,” and thus ordered the employees reinstated with back-pay. Id. The district court upheld the arbitrator’s award explaining that the arbitrator had interpreted the contract’s procedural requirements as a mandatory obligation to which there had been no waiver. Id. at 173. Because this was a contract interpretation the court concluded it lacked the power to disturb it even though it would likely not have made the same interpretation itself. Id.
Courts have allowed arbitrators to go even further and read procedural guarantees into just cause even where they are not found in the contract. In Chauffeurs, Teamsters and Helpers Local Union 878 v. Coca Cola Bottling Co., 613 F.2d 716 (8th Cir.1980), it was undisputed that the employee to be terminated engaged in dishonest behavior that would be sufficient grounds to fire that employee under the labor agreement. The arbitrator reinstated the employee, however, because Coca Cola failed to provide all the reasons for firing the employee prior to his grievance hearing, thus depriving the employee of an adequate opportunity to rebut the charges. Id. at 717. The Eighth Circuit upheld the arbitrator’s decision, finding that the arbitrator had interpreted the just cause provision as including procedural rights for the employee and that because this was an “arguable” contract interpretation the court lacked the power to disturb it. Id. at 721. Other courts to have considered the issue have followed the Eighth Circuit and allowed arbitrators to include procedural requirements as components of just cause, even when those requirements are not spelled out in the contract. Anaconda Co. v. District Lodge No. 27 of the Int’l Assn, of Machinists and Aerospace Workers, 693 F.2d 35, 37 (6th Cir.1982); Safeway Stores v. United Food and Commer *413 cial Workers Union, 621 F.Supp. 1233 (D.D.C.1985).
. Our case is akin to Maremont and even easier than Chauffeurs. The arbitrator made the contract interpretation that the grievance procedures spelled out in the contract were mandatory, and that because American Eagle did not abide by those requirements it did not have just cause to terminate Balser. This was an “arguable” contract interpretation, and therefore one that we are not empowered to upset here. Eastern Associated Coal 531 U.S. at 62, 121 S.Ct. 462. See also Elkouri & El-KOURI: How ARBITRATION WORKS 919 (Marlin M. Volz & Edward P. Goggin eds., 2nd ed. 1991) (“Arbitrators will, in many cases, refuse to uphold management’s action where it faded to fulfill some procedural requirement specified by the agreement.”)
The majority attempts to avoid this straightforward analysis by asserting that the arbitrator lacked the authority to consider American Eagle’s post-termination procedural violations in deciding whether the airline had just cause to fire Balser. If any such limitation exists on the arbitrator’s authority, it must be found in the collective bargaining agreement.[2] Misco, 484 U.S. at 39-40, 108 S.Ct. 364. The majority argues that Section 20(A)(2) is that limitation because it “does not require just cause plus the absence of any alleged procedural deficiencies by American Eagle to support termination.”
Section 20(A)(2) states, “[a] pilot who has completed his probationary period will not be discharged or disciplined without just cause.” While this section does not require more than just cause to terminate an employee, it does not define what that term means. Based on the mandatory language of Section 20(C), the arbitrator has concluded that the contract intended just cause to include the requirement that the employer hew to the prescribed grievance procedures. This was an “arguable” contract interpretation not in conflict with the contract’s plain language, and therefore not subject to judicial reversal. Eastern Associated Coal 531 U.S. at 62, 121 S.Ct. 462. Consequently, the majority’s substitution of its own interpretation of Section 20(A)(2) of the contract was legally erroneous.
The majority also suggests that there may be a federal common law prohibition on an arbitrator’s consideration of an employer’s post-termination behavior in determining just cause. Assertion of such a prohibition is contrary to Misco, which explained that “procedural questions which grow out of the dispute and bear on its ljust cause determination] are to be left to the arbitrator,” except where fraud or gross misconduct are alleged. Misco, 484 U.S. at 40, 108 S.Ct. 364.
Moreover, the case cited by the majority for this federal common law limitation on arbitrator discretion in fact reiterates the foundational rule that the limits on an arbitrator’s discretion are only found in the collective bargaining agreement itself. In Gulf Coast Industrial Workers Union v. Exxon Co., 991 F.2d 244 (5th Cir.1993), the labor agreement in question stated that Exxon “shall have the right to disei- *414 pline and discharge employees for just cause.” Id. at 247. The contract further specified that drug use constituted just cause, and rendered an employee “liable to discharge on the first offense.” Id. This contract language imposed the relevant restriction on the arbitrator: once an arbitrator found that drug use had occurred, termination had to be upheld. Thus, we refused to enforce the arbitrator’s award where he reinstated an employee who had been found using drugs because the contract limited the arbitrator’s discretion once just cause was found. Id. at 256. See also Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Association, 889 F.2d 599, 604 (5th Cir.1989) (finding that because contract defined “proper cause” for termination as including “carelessness,” once that finding was made no further inquiry was appropriate). Here there is no such contractual definition of just cause limiting the arbitrator’s discretion. Absent such a restriction, the arbitrator was free to consider the contractual due process as a component of just cause. Chauffeurs, 613 F.2d at 721; Maremont Corp., 515 F.Supp. at 173. Cf. Weber Aircraft v. General Warehousemen & Helpers Union, 253 F.3d 821, 824-25 (5th Cir.2001) (explaining that where contract did not strictly define just cause, nor limit the arbitrator’s discretion in deciding penalties, arbitrator was free to fashion a lesser remedy than discharge for less aggravated infractions).
Finally, the majority holds that the arbitrator implicitly found just cause here, and therefore that it exceeded its authority in then considering American Eagle’s contract violations in reducing Balser’s punishment. In reaching this conclusion the majority misinterprets the import of our decisions in Delta Queen and E.I. DuPont de Nemours v. Local 900 of the Int’l Chemical Workers Union (“Dupont”), 968 F.2d 456 (5th Cir.1992), and fads to follow United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
In Delta Queen we explained that the phrase just cause “carries no talismanic significance in labor jurisprudence.” Delta Queen, 889 F.2d at 604. “If a collective bargaining agreement defines ‘proper cause’ to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed.” Id. Thus, in Delta Queen because “proper cause” was defined to include carelessness, and the arbitrator found carelessness, he implicitly found “proper cause” even if he never used those words. Id. We then applied this rule to similar circumstances in DuPont, holding that where the arbitrator found the use of drugs on company premises was “a discharge offense,” and then found that conduct occurred, a just cause finding was implicit. DuPont, 968 F.2d at 458-59.
In contrast to Delta Queen, here there is no contractual list of offenses that constitute just cause, the finding of which terminated the arbitrator’s discretion. And unlike DuPont the arbitrator here never stated that the offenses that he found Bal-ser guilty of were offenses that themselves constituted just cause. The majority argues that the arbitrator’s statement that “[t]he Employer has not only the right, but a duty to rid the workplace of such conduct,” (referring to harassment) was such a statement. But the arbitrator’s statement that the airline had the right to rid the workplace of harassment is not the same as finding just cause to terminate Balser. Many steps short of termination would severely punish Balser for engaging in unacceptable conduct and deter the conduct from recurring, thereby “ridding” the workplace of that behavior. Likewise, while the arbitrator did find that Balser had violated company rules by arming himself with a dirk on board an aircraft, it *415 never suggested that this rule violation was itself a ground for discharge. Contrary to the majority’s suggestion, then, there is nothing in the arbitrator’s opinion which mandates the inference that the arbitrator found just cause.
Absent such a necessary logical implication, as in Delta Queen and DuPont, we lack the authority to imply just cause, where, as here, it results in a finding that the arbitrator exceeded his untrammeled authority to interpret and determine just cause. If there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator, as a mere “inference” of ultra vires action is insufficient “reason for refusing to enforce the award.” United Steelworkers, 363 U.S. at 598, 80 S.Ct. 1358.
Thus, I believe that the arbitrator was acting within the scope of his contractual authority by interpreting the contract to authorize it to consider the airline’s violation of Section 20(C)’s first-step hearing in determining just cause. I would, therefore, reverse the judgment of the district court and enforce the arbitration award.

. Section 20(G)(2) states: "If the Company fails to ... hold a required hearing within the time limits specified, the pilot and the Association may consider the grievance denied.”

. In Misco the Court reversed the Fifth Circuit’s decision refusing to enforce an arbitrator’s award because the arbitrator had failed to consider all the evidence available to him in making his decision. The Court explained that barring fraud or gross misconduct the only limitation on an arbitrator’s evidentiary determinations dwell in the contract. Misco, 484 U.S. at 39, 108 S.Ct. 364. The only such limitation in Misco was a ban on hearsay evidence, which the arbitrator did not transgress, Id, _ Because fraud or gross misconduct did not motivate the arbitrator, the reviewing court was powerless to impose additional evidentiary requirements on the arbitrator. Id. at 40, 108 S.Ct. 364.