**RED STAR EXPRESS LINES, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, TRUCK DRIVERS UNION, LOCAL NO. 170.**

**Civ. No. 83–2242–S.**

United States District Court,
D. Massachusetts.

May 7, 1984.

Paul Kingston, Kingston & Mulkern, Boston, Mass., for plaintiff.

Christy A. Pano, Pano & Maloney, Worcester, Mass., for defendant.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

The plaintiff in this case ("Red Star") seeks damages and injunctive relief as the result of a work stoppage by the defendant ("Local 170"). It also seeks to vacate part of an arbitrator's award to one of its employees. Both parties have moved for summary judgment.

On the morning of May 4, 1983, a Red Star employee named Allen Bishop ("Bishop") suffered serious injuries in an accident which occurred while he was driving a Red Star truck in New York. On May 27, 1983, Red Star discharged Bishop for driving recklessly and causing the May 4 accident. Upon filing of a grievance in accordance with the terms of the parties' collective bargaining agreement, a standard contract known as the National Master Freight Agreement ("the Agreement"), an arbitrator held a hearing regarding Bishop's discharge on June 7, 1983.

On July 18, 1983, the arbitrator found that Red Star had discharged Bishop unjustifiably. He ordered Red Star to reinstate Bishop within ten days and to pay him his full salary from the time he ceased receiving workmen's compensation. He ordered Bishop to serve a five-day suspension without pay. He also ordered Red Star to provide Bishop with all benefits normally available under the Agreement after he completed his suspension. In addition, the arbitrator ordered Red Star to pay Bishop "the difference between Workmens Compensation and what he would have earned in the same week for the period of Workmens Compensation". *In the Matter of Arbitration Between Red Star Express Lines, Inc. and Truck Drivers Union, Local #170* (Grodsky, Arb., July 18, 1983).

Red Star received this award on July 22, 1983. Under the terms of the decision, Red Star had ten days to comply with the award. Red Star felt that the arbitrator's award of back wages for a time period when an employee could not work exceeded his authority. Accordingly, on July 27 Red Star asked the arbitrator to reconsider the award. On July 28, the arbitrator agreed to hold a hearing on August 1, and ordered Local 170 not to engage in any work stoppages pending the reopening of the hearing. During the same day, Local 170 threatened a work stoppage.

On July 28, a Red Star manager sent a telegram to the Eastern Conference of Teamsters requesting an opinion as to whether the stoppage was authorized by either the Eastern Conference or the Teamsters Joint Council 10. At the time of the stoppage, Red Star had not received a reply.

At 12:55 a.m. on August 1, Local 170 began a work stoppage in which employees not members of Local 170 also joined. Local 170 declared that it had engaged in the stoppage because Red Star had failed to comply with a valid final arbitration award. Later that day, the arbitrator and a Red Star representative met with the intention of conducting the hearing previously scheduled. Local 170 did not sent a representative.

Following the issuance of a temporary restraining order on August 2, Red Star's employees returned to work. On August 9, the arbitrator refused to reschedule the hearing originally scheduled for August 1 and "reaffirmed" his July 18 award.

■ The first issue raised by this motion is whether the arbitrator had jurisdiction to award Bishop the difference between his workmen's compensation benefits and his salary for the time between the accident and his discharge. As a general matter, arbitrators have "broad power to fashion remedies on issues the parties have empowered him to resolve". *Courier-Citizen Co. v. Boston Electrotypers Union No. 11, International Printing and Graphic Communications Union of North America*, 702 F.2d 273, 281 (1st Cir.1983).

■ The power of arbitrators to fashion remedies has its limits. Federal courts may vacate arbitration awards when arbitrators have "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made". 9 U.S.C. § 10(d). Courts may not use the power to vacate as an excuse for reviewing the merits of the arbitrator's decision, and may vacate only when the arbitrator's words manifest an infidelity to the "essence" of the collective bargaining agreement. *United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

■ The arbitrator's source of law is not confined solely to the express provisions of the contract. He may also draw upon the practices and histories of the parties, which are part of what the Supreme Court has termed "the industrial common law". *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The considerations which an arbitrator draws upon in fashioning a judgment may "be foreign to the competence of courts". *Id.* at 581, 80 S.Ct. at 1352.

In this case, the parties' dispute regarding Bishop's discharge was arbitrable pursuant to Article 47 of the Agreement, which provides in relevant part:

> The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee to the employee.... The New England Joint Area Committee shall have the authority to order full, partial or no compensation for time lost.

As in *Locals 2222, 2320-2327, International Brotherhood of Electrical Workers, AFL-CIO v. New England Telephone and Telegraph Co.*, 628 F.2d 644, 649 (1st Cir. 1980), the parties contemplated that the arbitrator would determine an appropriate remedy if he found that the employer had discharged an employee without just cause. Unlike the collective bargaining agreement considered in *Locals 2222, 2320-2327*, neither Article 47 nor any other provision of the Agreement specifically limited the remedies available to an arbitrator in this type of case. Both parties explicitly committed the question of remedy to the arbitrator knowing that they had agreed to provide that arbitrator with extremely wide latitude to fashion appropriate remedies.

Red Star argues that the Agreement should not be construed in a way which justifies the arbitrator's award of compensation for time lost prior to the discharge. However, an arbitrator's award does not lose jurisdiction merely because its view of the contract differs from a more likely reading. The Supreme Court has made that proposition clear:

The collective bargaining agreement could have provided that if any of the employees were wrongfully discharged, the remedy would be reinstatement and back pay up to the date they were returned to work. Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in *United Steelworkers of America v. American Manufacturing Co., ante* [363 U.S.], p. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403], decided this day. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel, supra* at 598–599, 80 S.Ct. at 1361–1362.

As one scholar critical of frequent judicial intervention in the arbitration process has stated, "an apparently erroneous award may in fact just reflect the creative search for special rules that the parties need from their private judge, and for which they have negotiated". Kaden, "Judges and Arbitrators: Observations on the Scope of Judicial Review", 80 Colum.L. Rev. 267, 298 (1980). Professor Kaden's observation aptly describes this case.

█ The award in this case, when viewed as a whole, does not exceed the limits im-

posed by the Agreement. Red Star does not dispute the arbitrator's authority to award without explanation back pay from the date of discharge absent any disability. He chose not to take this route. He awarded Bishop five full days of salary and benefits, while at the same time awarding him the difference between three weeks of workmen's compensation benefits and three weeks of salary.

The arbitrator's award was · a peculiar remedy. There is no evidence in the record, however, to suggest that the amount of the award exceeded the amount for which Red Star knew it was potentially liable.

It is important to distinguish this case from cases such as *Bacardi Corp. v. Congreso de Uniones Industriales*, 692 F.2d 210, 214 (1st Cir.1982), in which the arbitrator awarded damages (attorneys' fees) in excess of the compensatory damages acknowledged by the parties to be legitimate. *See also Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir.1979) (vacating award three times larger than award sought); *but see General Telephone Co. of Ohio v. Communications Workers of America, AFL–CIO*, 648 F.2d 452 (6th Cir.1981) (upholding arbitrator's award of mileage expenses even though agreement prohibited mileage expenses). The plaintiff has failed to establish that the award exceeded an amount in excess of what was reasonably predictable.

In considering whether use of a measure of damages not recognized by accepted tort law standards is sufficient to invalidate an otherwise valid and reasonable award, I have drawn upon Judge Edwards' recent thoughtful warning against importation of legalism into the arbitration process:

If arbitration becomes simply another level of decision making, subject to judicial review on the merits, arbitrators may begin to decide cases and write opinions in such a way as to insulate their awards against judicial reversal (note omitted)—producing opinions that parrot the appropriate statutory standards in

conclusory terms, but suffer from a lack of reasoned analysis. Such a shift from the arbitral model, in which decision makers are free to focus solely on the case before them rather than on the case as it might appear to an appellate court, to the administrative model, in which decision makers are often concerned primarily with building a record for review, would substantially undercut the ability of arbitrators successfully to resolve disputes arising out of the employment relationship. *Devine v. White*, 697 F.2d 421, 436 (D.C.Cir.1983).

The disputed part of the award, while idiosyncratic, was neither excessive nor offensive to the open-ended nature of the task committed to the arbitrator by the parties. He could have awarded approximately the same amount of money without any explanation at all. I shall permit the award to stand because to do otherwise would be to engage in an improper review of the merits of the decision.

■ Red Star also contends that this court should vacate the disputed part of the award because it violates 9 U.S.C. § 10(c), which provides in relevant part that a court may vacate an award when the arbitrator has engaged in "misbehavior by which the rights of any party have been prejudiced". This claim has no merit. Red Star lost no rights because the statute under which it sought review of the award, M.G.L. c. 150C, § 8, is phrased in permissive language. Moreover, this award was neither indefinite nor incomplete, and the statute provides for correction only when the award "is so indefinite or incomplete that it cannot be performed". In these circumstances, the failure to conduct the scheduled second hearing did not constitute misconduct. *Cf. Local Union 251 v. Narragansett Improvement Co.*, 503 F.2d 309 (1st Cir.1974) (failure to postpone original hearing to obtain testimony only available at a later date did not constitute misconduct).

Finally, I turn to the question of whether Red Star is entitled to relief pursuant to 29 U.S.C. § 185(a), which provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Local 170 argues that it has not violated the Agreement. Its position is that the award was final on July 22, that Red Star did not comply with the award, and that it could strike pursuant to Articles 8(2)(a)(1) and 46(1)(e) of the Agreement. Article 8(2)(a)(1) provides that Local 170's agreement not to strike is no longer binding when Red Star has failed "to comply with a duly adopted majority decision of a grievance committee established by the National Master Freight Agreement or Supplemental Agreement". Article 46(1)(e) provides that a party which fails to comply with a final arbitration decision loses the benefit of the provisions of the Agreement forbidding strikes and lockouts.

■ Although Local 170's argument has some initial appeal, it ignores relevant parts of the Agreement. Article 46(1) provides that the parties must resolve all disputes through the arbitration mechanism contained in the Agreement. Determination of whether the July 18 award was "final" and whether Red Star's substantial performance of its obligations constituted "compliance" involved interpretations of the Agreement. Local 170 violated Article 46(1) when it failed to submit these issues to arbitration. One party to a collective bargaining agreement cannot decide unilaterally that the other party has violated the Agreement. *See, e.g., Teamsters Local Union No. 284 v. Maremont Corporation*, 515 F.Supp. 168, 174 (S.D.Ohio 1980).

Even if the July 18 award should be considered "final", Local 170 violated the Agreement. Article 8(2)(b) of the Agreement provides in relevant part:

In the event of a work stoppage, slowdown, walkout or cessation of work, not permitted by the provisions of Article 8, Section 2(a), alleged to be in violation of this Agreement, the Employer shall immediately send a wire to the appropriate Area Conference to determine if such strike, etc., is authorized.

No strike, slowdown, walkout or cessation of work alleged to be in violation of this Agreement shall be deemed to be authorized unless notification thereof by telegram has been received by the Employer and Local Union from such Area Conference. If no response is received by the Employer within twenty-four (24) hours after request, excluding Saturday, Sunday and holidays, such strike, etc., shall be deemed to be unauthorized by the Area Conference for the purpose of this Agreement.

The Carlton affidavit indicates that Red Star sent an appropriate wire, and did not receive a response in the required time. Carlton Affidavit, pp. 6–7. Since Local 170 has not presented any evidence which suggests that this claim is untrue, the strike must be deemed a violation of the Agreement.

Accordingly, the arbitrator's award is AFFIRMED, and the plaintiff's motion for summary judgment is ALLOWED and the defendant's motion DENIED with regard to the defendant's liability for breach of the Agreement, leaving open the question of damages or other appropriate relief.

If the parties cannot sooner reach a settlement, they may submit proposed forms of relief and supporting memoranda by May 21, 1984. I will not schedule oral argument unless the memoranda are insufficient.