**RED STAR EXPRESS LINES,**
Plaintiff, Appellee,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 170,**
Defendant, Appellant.

**RED STAR EXPRESS LINES,**
Plaintiff, Appellant,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 170,**
Defendant, Appellee.

Nos. 86–1378, 86–1466.

United States Court of Appeals,
First Circuit.

Argued Oct. 6, 1986.

Decided Jan. 12, 1987.

---

Thomas Flynn with whom Sheehan & Perkins, Somerville, Mass., was on brief for International Broth. of Teamsters, Local 170.

Joseph E. Rendini with whom Kingston & Associates, Boston, Mass., was on brief for Red Star Exp. Lines.

Before COFFIN, Circuit Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

On August 1 and 2, 1983, Local 170 of the International Brotherhood of Teamsters went on strike against Red Star Express Lines in protest against what it saw as Red Star's improper withholding from a union member of an arbitrator's award of back pay. The basic legal question here is whether that strike fell within an exception to a "no-strike" clause in the relevant labor contract. The "no-strike" clause says:

> The Union and the Employers agree that there shall be no strike, lockout, tie-up, or legal proceedings without first using

all possible means of a settlement [including arbitration] ... of any controversy which might arise.

New England Supplemental Freight Agreement, March 1, 1982 to March 31, 1985, Art. 46, § 1. The exception says:

> ... failure to comply with any final decision [of the arbitrator] withdraws the benefits of this Article.

*Id.*, Art. 46, § 1(e). The district court found that the exception did not apply; it issued an injunction stopping the strike (after two days), and it awarded Red Star $47,000 as compensation for the damages it suffered. The Union argues that the damage award was legally improper. We conclude that it was lawful.

## I

### Facts

On May 4, 1983, Allen Bishop, a Red Star driver, was hurt and his truck nearly destroyed in an accident. Red Star discharged Bishop. The Union protested his dismissal. And, the matter went to arbitration.

The issue before the arbitrator was whether Bishop had driven recklessly. Under most circumstances, the contract forbade Red Star to discharge or suspend a driver without "at least one warning notice." But, it allowed a discharge without a warning notice "if the cause for such discharge is ... recklessness resulting in serious accident while on duty...." Red Star argued that Bishop had been speeding, that he had previously tampered with the truck's speed-recording device, and that, in any event, he had left the proper route. The Union argued that the speed-recording device was inaccurate and that any other improprieties did not amount to reckless behavior. The arbitrator decided in the Union's favor and ordered Red Star to reinstate Bishop. The arbitrator permitted Red Star to suspend Bishop for five days (beginning May 27); but he also held that Red Star must pay Bishop "what he would have earned" while he was recuperating

---

* Of the Fifth Circuit, sitting by designation.

(from May 4 to May 27) minus what he received under Workmen's Compensation during that time. The arbitrator issued this award on July 18, 1983; Red Star says that it received the award on July 22.

Red Star immediately reinstated Bishop, but it did not give him all of his back pay. Instead, on July 27, Red Star wrote to the arbitrator, pointing out what it said were errors in respect both to findings of fact and to "the remedy ... ordered." It said that the arbitrator should not have ordered it to pay Bishop the difference between what he "would have earned" and his Workmen's Compensation payments from May 4 to May 27 because Bishop was "disabled and unavailable for work" during that time. Thus, apparently, Bishop would have received no more than Workmen's Compensation for the period after May 4 even if the Company had not tried to dismiss him for recklessly causing the accident. The Company advanced several reasons that (it said) made it improper for it to pay Bishop more than Workmen's Compensation and made it unlawful for the arbitrator to award any extra payment for that period. Accordingly, Red Star requested that

> we be allowed to hold in abeyance any payment of back wages ordered to Mr. Bishop due to the difficulties in reclaiming those monies should you find it proper to reverse the original remedy.

The next morning (Thursday, July 28), the Union sent the Company a telegram referring to Red Star's letter to the arbitrator, characterizing the back pay award as "final," and threatening a strike "on Monday August 1 1983" unless the Company paid Bishop. That afternoon, the arbitrator sent Red Star a telegram stating that he would "reopen case," that there would be a "hearing Monday August 1," and that Red Star should

> [h]old in abeyance differential payment workmans comp and earnings pending hearing. There shall be no job action pending hearing reopening.

On Monday, August 1, the Union went on strike. No Union representative ap-

peared at the arbitrator's scheduled hearing. The Company then went to court under the Labor-Management Relations Act § 301, 29 U.S.C. § 185, alleging a violation of the contractual "no-strike" clause and seeking an injunction and damages. The Company obtained a temporary restraining order (later expanded into a preliminary injunction), and the Union ended its strike the next day. On August 9, the arbitrator reaffirmed his award; Red Star then paid Bishop the full amount of back pay "under protest." Red Star continued its court suit, asking the court to set aside the protested portion of the arbitration award as well as to award damages for the strike. The court affirmed the arbitrator's award, but it held the strike illegal. *Red Star Express Lines v. International Brotherhood of Teamsters, Local No. 170*, 587 F.Supp. 1243 (D.Mass.1984). The court then sent the case to a magistrate to calculate damages. And, it later affirmed the magistrate's damage calculation of $47,695.74.

## II

### *The Union's Appeal*

#### A.

The Union argues that its strike was legal because it fell within the contractual exception to the "no-strike" clause. But, the exception says the "no-strike" clause applies unless Red Star "fail[ed] to comply with" a "final decision" of the arbitrator. We do not believe that Red Star "fail[ed] to comply" with such an order.

A common sense application of the contract to the facts suggests that those facts fall outside the exception. In essence, the arbitrator told Red Star to reinstate Bishop within ten days of the time it received his award and to pay Bishop the "wages/workmen's compensation" differential. Red Star received the award on July 22 and promptly complied with all of its terms except for the differential back-pay order. Within ten days, it asked the arbitrator to reopen the proceeding; and, within ten days, it received from the arbitrator notice that he would hold another

hearing and an instruction to hold payment of the "differential" in "abeyance." Red Star then followed the arbitrator's instruction. Thus, one's initial (though perhaps slightly naive) view of the matter is that insofar as the arbitrator's award was "final," Red Star did "comply" with it.

The Union suggests that this simple view of the matter is wrong because there is considerable precedent holding that, once an arbitrator executes and delivers an award, that award is final and the arbitrator lacks any power to amend it. *See Local P-9, United Food and Commercial Workers v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 (8th Cir.1985); *United Steelworkers of America v. Ideal Cement Co.*, 762 F.2d 837, 841 n. 3 (10th Cir.1985); *McClatchy Newspapers v. Central Valley Typographical Union*, 686 F.2d 731, 733–34 (9th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). In the Union's view, this common law doctrine, called *functus officio*, means that Red Star, in *asking* for a reopening while holding Bishop's money "in abeyance," failed to "comply" with a "final" award.

This more sophisticated argument is nonetheless inadequate. For one thing, the application of *functus officio* to labor disputes is considerably less absolute than the Union suggests. Strong authority in this circuit (and in other jurisdictions) holds that a labor arbitrator may, for example, "interpret or amplify" his award, *functus officio* notwithstanding. *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 278–80 (1st Cir.1983) (arbitrator may reopen proceeding in which he had ordered back pay award to "senior journeyman" in order to identify journeyman and specify amount of back pay); *Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.*, 628 F.2d 644, 647–49 (1st Cir.1980) (court can order parties to resubmit dispute over extent of "lost earnings" ordered paid); F. Elkouri and E. Elkouri, *How Arbitration Works* 284 n. 269 (4th ed.1985); *cf.* Mass.Gen. Laws ch. 150C, § 8 (arbitrator may modify, clarify or correct award for error in calcu-

lation or form, or for incompleteness such as would render performance impossible, upon application of a party within ten days of delivery). If the arbitrator has the power to change his award in these ways, he must also have the power to suspend an issued order temporarily while he considers a request that he do so.

■ This fairly obvious principle controls the case, for Red Star's request at least invoked the arbitrator's power of temporary suspension. The arbitrator might have considered, for example, whether he could have allayed Red Star's concerns by interpreting his order to pay Bishop what he "would have earned in the same week" so as to reflect the fact that, given his injuries, Bishop would likely not have earned more than Workmen's Compensation even in the absence of the discharge. Since Red Star's request, in context, is not obviously outside what an arbitrator might reasonably think he had the lawful power to consider, the arbitrator could take reasonable time to consider the lawfulness of Red Star's request. He therefore had adequate power to order Red Star to hold the compensation payment "in abeyance" for a brief period so that he could conduct a hearing a few days later to find out about the matter. This being so, Red Star simply cannot be said to have failed to comply with a final order during that interim period. We do not see how any contrary view could be reconciled either with the language of Article 46 ("there shall be no strike ... without first using *all* possible means of a settlement ... of *any* controversy which might arise") (emphasis added) or with the many cases favoring arbitration as a method of resolving labor disputes. *See Drake Bakeries v. Local 50, American Bakery & Confectionery Workers*, 370 U.S. 254, 263–64, 82 S.Ct. 1346, 1351–52, 8 L.Ed.2d 474 (1962); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of*

*America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *see also John Wiley & Sons v. Livingston,* 376 U.S. 543, 555–59, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964) (procedural matters normally determined by arbitrator); *Jones Motor Co. v. Teamsters Local Union No. 633,* 671 F.2d 38, 45 (1st Cir.), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982) ("[C]lauses broadly permitting one party to be the unilateral determiner of whether arbitration is or is not required are disfavored.").

■ The Union also bases its "failure to comply" argument on the claim that Red Star was not in good faith when it requested permission to hold its compliance temporarily "in abeyance." The Union says that Red Star had no intention of *ever* complying with the award, come what may, and that it thus, in a sense, anticipatorily breached its duty to comply. But the evidence to which the Union points—testimony as to statements made by Red Star officials between July 22 and 27—cannot competently support this claim. That evidence was first elicited during the *damages* hearing before the magistrate *after* the district court had already decided the strike was illegal. In any event, the evidence, consisting of a few heated statements in the context of a threatened strike, does not show that Red Star's action was "so unreasonable as to amount to a repudiation of the duty to arbitrate." *Teamsters Local Union No. 284 v. Maremont Corp.,* 515 F.Supp. 168, 175 (S.D.Ohio 1980); *see also Drake Bakeries,* 370 U.S. at 262–63, 82 S.Ct. at 1351 (duty to arbitrate is "meant to survive breaches of contract").

In sum, the facts of this case do not bring it within the exception to the no-strike clause. Hence, the Union's strike was unlawful.

### B.

■ The Union also argues that its contract requires that an arbitrator, not a magistrate, determine the amount of damages that the illegal strike caused. The Union raised this point for the first time, however, *after* the magistrate had held the damages hearing. And, even then, it put the point equivocally; it simply said (in its post-hearing brief), "... it is questionable whether the Magistrate's hearing is the proper forum for the determination of damages here." To allow a party to wait to see how a hearing unfolds and then decide whether it wishes another forum risks an obvious unfairness. Given this risk, the Union's effort to raise the point came too late. It waived any right that the contract may have given it to have damages determined by an arbitrator. *See Jones Motor Co.,* 671 F.2d at 41–44.

### III.

#### *Red Star's Appeal*

■ Red Star also appeals the district court's judgment, arguing that it should have included prejudgment interest. Whether or not to award such interest in an LMRA proceeding of this sort is an equitable question primarily up to the district court. *Blau v. Lehman,* 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962); *Board of Commissioners of Jackson County v. United States,* 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939); *Lodges 743 and 1746, International Association of Machinists and Aerospace Workers v. United Aircraft Corp.,* 534 F.2d 422, 445–47 (2d Cir.1975), *cert. denied sub nom. Lodge 743, International Association of Machinists and Aerospace Workers v. NLRB,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). In this instance, however, despite Red Star's having argued the matter at some length in its brief before the magistrate and having raised the issue again before the district court, neither the magistrate nor the court explicitly addressed it. Because the losses here are tangible losses of the sort that often calls for a prejudgment interest award, *see Heritage Homes of Attleboro v. Seekonk Water District,* 648 F.2d 761, 764 (1st Cir.), *vacated in part on other grounds,* 454 U.S. 807, 102 S.Ct. 81, 70 L.Ed.2d 76, *cert. denied,*

454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Hembree v. Georgia Power Co.,* 637 F.2d 423, 429–30 (5th Cir.1981), we believe that the court should determine the question explicitly and provide its reasons, *cf. Blackburn v. Snow,* 771 F.2d 556, 573 (1st Cir.1985) (remanding for specific findings where court's basis for awarding prejudgment interest on intangible losses not apparent).

The case is remanded for entry of findings in respect to prejudgment interest. In all other respects, the judgment of the district court is affirmed.

*Affirmed in part, remanded in part.*

JOHN R. BROWN, Circuit Judge, concurring.

I concur without reservation. I would add only that *functus officio* and all the other judgemade hostilities to arbitration went out with *Lincoln Mills*[1] and, if need be, the trilogy[2] and the great flood of following cases in all the circuits.

---

**1.** *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

**2.** *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).