_____

No. 95-2661
_____

Midwest Coca-Cola Bottling Co.,    *
                                   *
        Plaintiff - Appellee,      *
                                   *
    v.                             *
                                   *
                                   * Appeal from the United States
Allied Sales Drivers, Ambulance,* District Court for the
Beer, Brewery, Grain Elevator,     * District of Minnesota.
Retail Liquor, Livery, Malt        *
House, Spring Water,               *
Soft Drinks, Taxi Cab, Vending     *
Drivers, Helpers, Inside           *
Employees, and General Workers     *
Union, Local 792,                  *
                                   *
        Defendant - Appellant.     *

_____

        Submitted:  February 16, 1996

            Filed:  July 11, 1996
_____

Before McMILLIAN, LAY and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

        Allied Sales Drivers, Ambulance, Beer, Brewery, Grain Elevator,
Retail Liquor, Livery, Malt House, Spring Water, Soft Drinks, Taxi Cab,
Vending Drivers, Helpers, Inside Employees, and General Workers Union,
Local 792, appeals from an order of the district court vacating an
arbitrator's award that ordered Midwest Coca-Cola Bottling Company to
reinstate a discharged employee.  The Union argues that the arbitrator's
award is consistent with the collective bargaining agreement between the
Union and Coca-Cola,

and, therefore, the award should be enforced.  We reverse the judgment of the district court and order enforcement of the arbitrator's award.

William Thoreson worked for Coca-Cola and his employment with Coca-Cola was governed by a collective bargaining agreement negotiated between the Union and Coca-Cola.  The Agreement contains a management prerogatives paragraph, giving Coca-Cola the right to make and enforce rules of conduct and to discipline and discharge employees.[1]  The Agreement provides that Coca-Cola shall not discharge an employee after he obtains seniority without just

---

[1]Article I(d) of the Agreement states:

ARTICLE I.
RECOGNITIONS AND COVERAGE

(d)    Management Prerogatives:  [Coca-Cola] has, retains and shall continue to possess and exercise each and every management right, right to function, privilege and authority which it had prior to the certification of the Union except, and only except, as specifically limited, relinquished, modified, or restricted by this Agreement.  Illustrative, but not all inclusive of the rights of management retained are the right to manage the Company; to direct the work force, and to make and enforce rules of conduct; . . . to classify, promote, discipline, demote, and discharge employees; . . . . Subject to the terms of this agreement, rights not specifically set forth in the Agreement upon which the parties negotiated or had the opportunity to negotiate, whether or not such rights have been exercised by [Coca-Cola] in the past, remain with [Coca-Cola].

(emphasis added).

cause.[2]   There is a grievance procedure, the last step of which is arbitration.[3]

---

[2]Article IV(d) of the Agreement states:

### ARTICLE IV.
### GENERAL WORKING CONDITIONS

(d)    Discharge: [Coca-Cola] shall not discharge any employee after he has been placed on the seniority list without just cause.  Notice of discharge or suspension shall be mailed to the Union office within two (2) work days of occurrence.  In case of discharge, such employee may request an investigation as to the discharge and should such investigation prove an injustice has been done, the employee shall be reinstated and compensated at his usual rate of pay, while he has been out of work. Appeal from a discharge or suspension must be taken within five (5) work days following notice thereof to the Union Steward by written notice by the Union to [Coca-Cola], and if a satisfactory decision is not reached by the Union and [Coca-Cola], it shall be settled as provided under Article VII of this Agreement.

Suspension or discharges will be imposed when the decision to take action is made.

(emphasis added).

[3]Articles VII(a) and (b) of the Agreement state:

### ARTICLE VII.
### GRIEVANCE PROCEDURE

(a) No claimed grievance of any kind will be acted upon or considered valid for any reason unless filed in writing with [Coca-Cola] within thirty (30) days of the alleged violation.  This shall not apply to discharge or suspension cases which shall be considered under Article IV(d).

(b) Any controversy arising from the interpretation of, or adherence to the terms and provisions of this Agreement shall be settled promptly by negotiations between the Union and [Coca-Cola].  If no adjustment satisfactory to both parties can be reached in this way, then the matter shall be settled by arbitration . . . .

(emphasis added).

The Agreement recognizes Coca-Cola's right to make work rules for its employees, except where this right is specifically limited, modified, or restricted by the Agreement. Exercising its right to make rules of conduct, Coca-Cola required any employee who was going to be late or absent from work to call and notify Coca-Cola thirty minutes before his scheduled work time. Coca-Cola provided for increasing punishments for each successive violation of its rule within a twelve-month period: a verbal warning for the first; a written warning for the second; a three-day suspension for the third; and discharge of the employee for the fourth violation in twelve months.[4]

Thoreson reported for work late four times from October 1993 to May 1994, and on every occasion failed to call in thirty minutes before his scheduled time for work. Before October 1993, Thoreson had worked for Coca-Cola for seventeen years without a problem.

Coca-Cola gave Thoreson a verbal warning for his first late

---

[4]Coca-Cola's work rules provide:

Violation of [work] rules will normally result in progressive discipline. On a first occurrence, a verbal warning will be issued. Second occurrence within a 12 month period will result in a written warning. On a third occurrence, the employee will be given a three (3) day suspension. Finally, a fourth violation will result in discharge.

. . .

Employees who are unable to attend work must call and report their absence 30 minutes prior to the time they are scheduled to start. "Call in" must be made every day to the employee's immediate supervisor, unless the supervisor specifically tells the employee that a call does not have to be made every day (as in the case of a long-term illness).

In the event an employee will be late reporting for work, a call will be made to report the intended lateness 30 minutes prior to the scheduled starting time.

-5-

arrival to work without calling in, a written warning for his second, and a three-day suspension for his third. Finally, after Thoreson arrived late for work without calling in for the fourth time in less than twelve months, Coca-Cola discharged Thoreson. The Union disagreed with Coca-Cola's decision to discharge Thoreson and asked Coca-Cola to reinstate Thoreson, but Coca-Cola refused to change its decision.

The dispute between the Union and Coca-Cola over Thoreson's discharge went to arbitration as required by the Agreement after the Union and Coca-Cola failed to settle the dispute themselves. The arbitrator found that between October 1993 and May 1994 Thoreson had failed four times to call Coca-Cola before his late arrival at work and that Thoreson had no good excuse for his failures. The arbitrator ruled, however, that Coca-Cola should reinstate Thoreson without backpay because Thoreson had a good work record over the seventeen years he worked for Coca-Cola before October 1993.

Coca-Cola refused to reinstate Thoreson and brought this action in federal district court to vacate the arbitrator's award. The district court stated that the arbitrator found that Thoreson had violated Coca-Cola's work rules four times without any good excuse for doing so. The district court concluded that Thoreson's four violations constituted just cause to discharge Thoreson and that the Agreement did not permit the arbitrator to order Thoreson's reinstatement after his four unexcused violations of Coca-Cola's work rules. The district court vacated the arbitrator's award, and the Union appeals.

Our review of this arbitration award is exceptionally narrow because Coca-Cola and the Union have contracted to have their disputes settled by an arbitrator, and it is the arbitrator's view of the facts and the meaning of the Agreement that they have agreed to accept. See United Paperworkers Int'l Union v. Misco, Inc., 484

-6-

U.S. 29, 37-38 (1987). We must enforce the arbitrator's award, even if we think he has committed serious error, as long as he is arguably construing or applying the Agreement and acting within the scope of his authority. Id. at 38. The arbitrator cannot, however, dispense his own brand of industrial justice and his award is legitimate only so long as it draws its essence from the Agreement. United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).

Coca-Cola argues that the arbitrator could not order it to reinstate Thoreson because the Agreement permits it to make and enforce work rules and that it properly discharged Thoreson under those rules.

We reject Coca-Cola's argument because it fails to consider the entirety of the applicable contract provisions. The Agreement gives Coca-Cola the ability to adopt and enforce work rules and to discipline and discharge employees, and makes clear that these management rights exist except as specifically limited, relinquished, modified or restricted by the Agreement. Thus, while the Agreement gives Coca-Cola the right to enforce work rules and to discharge employees, it also provides that Coca-Cola "shall not discharge any employee after he has been placed on the seniority list without just cause." These provisions of the Agreement are the basis for the issues that were presented to the arbitrator for a decision.

We have in earlier cases, one of which involves Coca-Cola, considered the tension that may exist between the right to discipline and contract provisions requiring just cause for discharge. In Chauffeurs, Teamsters & Helpers Local Union No. 878 v. Coca-Cola Bottling Co., 613 F.2d 716 (8th Cir.), cert. denied, 446 U.S. 988 (1980), we rejected an argument that an arbitrator's award reinstating an employee was unenforceable because it had no foundation in the collective bargaining agreement. Like the

agreement in this case, the contract provided that the company could not discharge an employee without just cause. Id. at 718-19. The management rights provision, which is quite similar to the one before us, reserved to the company the rights not "clearly and expressly relinquished" by the specific terms of the contract, and provided that the company could "discharge or otherwise discipline employees for cause determined to be just by the [company]." Id. at 719. The Chauffeurs case specifically involved the issue of whether "just cause" was ambiguous as to its procedural implications, and determined that interpretation by an arbitrator was appropriate. Id. at 719-20. Chauffeurs is instructive in that it examines the relationship between specific provisions of the contract concerning management's right to discharge and just cause.

Later, in Local 238 International Brotherhood of Teamsters v. Cargill, Inc., 66 F.3d 988 (8th Cir. 1995) (per curiam), an employee was discharged for refusing to submit to a drug and alcohol test. The company's drug and alcohol policy, which the collective bargaining agreement incorporated by reference, stated that any employee who refused a test would be discharged. Id. at 989-90. The collective bargaining agreement also stated that the company could not discharge an employee without just cause. Id. at 990. An arbitrator reinstated the employee because he concluded that there was insufficient cause to discharge the employee. Id. at 989. After considering these facts we stated:

> [T]here is an inherent tension or ambiguity between the portion of the drug and alcohol policy which provides that if "testing is refused, the employee . . . will be terminated," and the provision in the collective bargaining agreement submitting drug and alcohol policy disputes to grievance and arbitration. Harmonizing these discordant provisions was clearly a matter for the arbitrator and was well within his authority.

Id. at 990. We also observed that the arbitrator was concerned with the question of remedy and went on to quote Misco, 484 U.S. at

-8-

41, as follows:

> [T]hough the arbitrator's decision must draw its essence from the agreement, he `is to bring his informed judgment to bear in order to reach a fair solution of a problem. <u>This is especially true when it comes to formulating remedies.</u>'

<u>Id.</u>

In the case before us the Agreement specifically gives Coca-Cola the right to make and enforce rules of conduct and to discharge. The work rules adopted by Coca-Cola are based on this provision in the Agreement. Discharge, however, is limited by the clear statement that Coca-Cola "shall not discharge any employee . . . without just cause." Arbitration of the issue of discharge under the Agreement of necessity involved the issue of just cause. As the Agreement nowhere defines just cause, the arbitrator must interpret and decide the meaning of the Agreement with respect to its discharge provisions. Under the Agreement, the arbitrator was entitled to decide that Coca-Cola did not have just cause to discharge Thoreson, and to order Coca-Cola to reinstate Thoreson. Insofar as there was tension between the right to enforce work rules specifying discharge, and to discharge only for just cause, these were issues to be resolved by the arbitrator. <u>Cargill</u>, 66 F.3d at 990. The fact that we, the district court, or Coca-Cola may disagree with the arbitrator's arguable interpretation of the Agreement is of no consequence, because Coca-Cola and the Union bargained for the arbitrator's interpretation. <u>See</u> <u>Enterprise Wheel & Car Corp.</u>, 363 U.S. at 599. Because the arbitrator has arguably construed and applied the Agreement and has acted within the scope of his authority, his award drew its essence from the Agreement.

In support of its argument that discharge was mandated by a violation of its work rules, Coca-Cola relies on <u>Truck Drivers & </u>

Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562 (8th Cir. 1964), and St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood Local 6, 715 F.2d 405 (8th Cir. 1983). The collective bargaining agreements in those cases, however, are substantially different from the one before us. In Ulry-Talbert, the company fired an employee for dishonesty in falsifying his work records. 330 F.2d at 563. The agreement gave the company the right to discharge and discipline employees, but also provided that regular employees may be discharged for proper cause. Id. Immediately following the "proper cause" provision, the agreement listed conduct, including dishonesty, that "shall be grounds for discharge." Id. at 563-64. Additionally, the agreement permitted the company to discharge employees for dishonesty without the normally required written warning. Id. at 564. Further, under the agreement, an arbitrator, in considering discharges, "shall only reverse" the decision of the company if he "finds that the Company's complaint against the employee is not supported by the facts, and that the management has acted arbitrarily and in bad faith or in violation of the express terms of this Agreement." Id. Because the agreement in Ulry-Talbert specifically modified the requirement of proper cause for discharge by stating dishonesty "shall be grounds for discharge," and limited the arbitrator to deciding whether the company's complaint was supported by the facts, Ulry-Talbert gives no support to Coca-Cola.

Further, this is not a case such as St. Louis Theatrical, where a company discharged an employee for an unauthorized work stoppage. The collective bargaining agreement in St. Louis Theatrical stated that any employee discharged for participating in an unauthorized work stoppage "shall have no recourse to any other provisions of this Agreement except as to the fact of participation." 715 F.2d at 407-08. We held that once the arbitrator found that the employee participated in the work stoppage and was thus subject to discipline, any consideration as to whether the discharge was an excessive penalty exceeded his

authority.  <u>Id.</u> at 408-09.  Again, because the agreement in <u>St. Louis</u> <u>Theatrical</u> limited the arbitrator's authority in a way that the agreement in this case does not, <u>St. Louis Theatrical</u> gives no support to Coca-Cola.

Coca-Cola's argument, at the core, is that the work rules trump the Agreement.  We reject this argument.

Accordingly, we reverse the judgment of the district court and order enforcement of the arbitrator's award.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-